Present: Hassell, C.J., Lacy, Keenan, Koontz, Kinser and
Lemons, JJ., and Compton, S.J.

MICHAEL SANTEN

v.  Record No. 021781  OPINION BY JUSTICE CYNTHIA D. KINSER
                                        April 17, 2003
ROBERT TUTHILL, T/A WINCHESTER
FAMILY BILLIARDS, ET AL.

          FROM THE CIRCUIT COURT OF CLARKE COUNTY
                    John R. Prosser, Judge

     The primary issues in this appeal concern the

admissibility of certain evidence in a civil proceeding,

specifically: (1) a defendant's guilty plea in general

district court when the defendant subsequently appeals the

conviction to circuit court; (2) the result of a

preliminary breath test; and (3) testimony of an expert

toxicologist.  Because the guilty plea was annulled by the

appeal to circuit court and because there was not an

adequate foundation to support the admissibility of the

other evidence, we find no error in the circuit court's

refusal to admit this evidence.

     This case arose out of an alleged altercation between

Michael Curtis Santen, Sr., and Glenn Richard Wilfong.  The

incident occurred when Wilfong was assisting Robert

Tuthill, Jr. (Tuthill, Jr.), in delivering and assembling a

billiard table at the home of Santen and Norma Katherine

DeSantos.  Santen and DeSantos had purchased the billiard

1

table from Robert Tuthill, Sr. (Tuthill, Sr.), t/a Winchester Family Billiards. Tuthill, Sr., had asked Wilfong to accompany Tuthill, Jr., on this occasion. Wilfong had previously assisted the Tuthills in installing billiard tables.

Approximately 20 minutes after arriving at the Santen-DeSantos residence, Tuthill, Jr., realized that he needed to return to the store to obtain the correct piece of slate for the billiard table. While Tuthill, Jr., was away, a disagreement arose between Santen and Wilfong which resulted in DeSantos calling Tuthill, Sr., and informing him that he needed to "get [Wilfong] out of [her] basement and take the pool table pieces back." Tuthill, Sr., instructed DeSantos to tell Wilfong to pack up his tools and wait outside until Tuthill, Jr., returned. After DeSantos told Wilfong to leave, the situation escalated, and Wilfong allegedly struck Santen in the face with a hammer.

Local law enforcement officers were dispatched to the residence. They found Santen and Wilfong in the basement of the house, with Wilfong lying on the floor and Santen "over top of him." One of the officers subsequently administered a preliminary breath test to Wilfong, using a "department issued . . . alcosensor."

2

Wilfong was charged with a misdemeanor as a result of the altercation. He pled guilty to the charge in general district court. Wilfong, however, subsequently appealed his conviction to circuit court where he pled not guilty.[1]

Santen then filed an amended motion for judgment against Wilfong and Tuthill, Sr., t/a Winchester Family Billiards, seeking monetary damages for his injuries allegedly resulting from the altercation with Wilfong. Prior to trial, the defendants filed motions in limine asking the court, among other things, to exclude not only testimony from Richard McGarry, an expert in the field of toxicology, but also evidence that Wilfong had pled guilty to the misdemeanor charge in general district court and that his blood alcohol content, as measured by the preliminary breath test, was 0.209.[2]

After hearing argument on the motions, the circuit court initially stated from the bench that it would allow the numerical result of the preliminary breath test to be admitted. However, the court revisited the motions on the

---

[1] The records concerning the misdemeanor charge are not part of the record in this appeal.

[2] On brief, Santen uses the phrase "grams per liter of breath" as the unit of measure for Wilfong's blood alcohol content. However, there is nothing in the record to verify that "grams per liter of breath" was the unit of measure for the preliminary breath test administered to Wilfong.

morning of trial and learned, for the first time, that Wilfong's blood alcohol content had been measured by a preliminary breath test. Noting that the results of such tests are inadmissible in a criminal prosecution, see Code § 18.2-267(E), the court observed that the issue here was whether a different rule should apply in a civil case. The circuit court concluded that results of preliminary breath tests are inadmissible because "they're not deemed to be sufficiently reliable," and that, therefore, the numerical result of Wilfong's preliminary breath test could not be admitted into evidence. However, the court stated that "[the officer] can testify that the test indicated that [Wilfong] had consumed alcohol, . . . [b]ut the number and readings . . . [are] inadmissible for any purpose[.]"

With regard to the other issues raised in the motions in limine, the circuit court held that Santen could not introduce evidence that Wilfong had pled guilty in general district court to the misdemeanor charge. Finally, the court concluded that Santen could "call Richard McGarry to testify concerning, and limited to, the matters designated by [Santen] in his expert designation herein." Continuing, the court held that "[a]lthough Richard McGarry [could] testify concerning the effects of alcohol on the central nervous system in general, he [would] not be permitted to

4

testify as to the effects alcohol did or may have had on Defendant Wilfong specifically." Despite the court's ruling that McGarry could testify with regard to certain matters, Santen elected not to call him as a witness at the trial.

At the conclusion of Santen's evidence, counsel for Tuthill, Sr., moved to strike the evidence, arguing that Santen had not established the existence of an employer/employee relationship between Tuthill, Sr., and Wilfong. After hearing argument from counsel, the court granted the motion. The trial then proceeded against only Wilfong. A jury ultimately returned a verdict in favor of Wilfong.

On appeal, Santen first argues that the circuit court erred in excluding evidence concerning Wilfong's guilty plea in general district court. Santen contends that, if Wilfong had not appealed his conviction to circuit court, the guilty plea would have been admissible against him in this subsequent civil proceeding pursuant to Code § 8.01-418.[3] According to Santen, the appeal to circuit court

---

[3] Code § 8.01-418 provides, in relevant part, that "[w]henever, in any civil action, it is contended that any party thereto pled guilty . . . in a prosecution for a criminal offense . . . which arose out of the same occurrence upon which the civil action is based, evidence

"merely vacat[ed] the judgment of the general district court—it [did] not eradicate the record of the proceedings."  Further, Santen asserts that, even if evidence of the guilty plea was not admissible pursuant to Code § 8.01-418, such evidence should have been admitted either as a party admission or as a prior statement that was inconsistent with Wilfong's trial testimony that he had acted in self-defense.  We do not agree with Santen's position.

"Any person convicted in a district court of an offense not felonious shall have the right . . . to appeal to the circuit court" even when the conviction was based on a plea of guilty.  Code § 16.1-132.  The appeal is heard de novo in the circuit court.  Code § 16.1-136.  The purpose of these statutes is to give an accused the benefit of a new trial in the circuit court "unhampered and unprejudiced" by the guilty plea entered in the district court.  Baylor v. Commonwealth, 190 Va. 116, 120, 56 S.E.2d 77, 79 (1949) (decided under former corresponding statutes).

This Court has repeatedly held that the effect of an appeal to circuit court is to "annul[] the judgment of the

---

of said plea . . . as shown by the records of the criminal court shall be admissible."

6

inferior tribunal as completely as if there had been no previous trial." Gaskill v. Commonwealth, 206 Va. 486, 490, 144 S.E.2d 293, 296 (1965); accord Buck v. City of Danville, 213 Va. 387, 388, 192 S.E.2d 758, 759 (1972); Baylor, 190 Va. at 119-20, 56 S.E.2d at 78-79; Gravely v. Deeds, 185 Va. 662, 664, 40 S.E.2d 175, 176 (1946). In other words, the appeal to circuit court "annuls or wipes out the former plea of guilty." Baylor, 190 Va. at 120, 56 S.E.2d at 79. Thus, it is reversible error to permit the former guilty plea and the judgment of the district court to be introduced into evidence in the trial of the criminal charge on appeal. Id.; Gravely, 185 Va. at 664, 40 S.E.2d at 176.

Since an appeal under Code § 16.1-132 "annuls or wipes out" a guilty plea entered in the district court, there no longer exists a guilty plea that, otherwise, would be admissible in a subsequent civil proceeding under the provisions of Code § 8.01-418. We draw a distinction between a guilty plea, which forms the basis of a district court's judgment, and a defendant's statements made while testifying before the district court. That testimony, unlike a guilty plea, is not "wiped out" by an appeal and is, therefore, admissible in the subsequent trial of the

case.  Harbaugh v. Commonwealth, 209 Va. 695, 700, 167 S.E.2d 329, 334 (1969).

Thus, we hold that a guilty plea entered in district court that has been annulled by virtue of an appeal to circuit court is not admissible in a civil proceeding, either under the provisions of Code § 8.01-418, or as a party admission or prior inconsistent statement. Consequently, the circuit court did not err in excluding evidence of Wilfong's guilty plea.

Santen next argues that the circuit court erred in excluding both the numerical result of Wilfong's preliminary breath test and McGarry's testimony.[4]  According to Santen, this evidence, taken together, was relevant to demonstrate the amount of alcohol consumed by Wilfong on

---

[4] In the assignment of error regarding McGarry, Santen initially stated that "The Trial Court Erred in Excluding the Testimony of Richard McGarry, Plaintiff's Specially Retained Expert, who was to Testify Regarding the Reliability of the Alcosensor used to Determine Wilfong's Blood Alcohol Content, and was to Testify how Defendant Glenn Wilfong's Elevated Blood Alcohol Content Affected his Ability to Control his Actions, and his Ability to Accurately Recollect the Events of that Night."  On brief, Santen re-stated the assignment of error and added a phrase that McGarry would testify "about the accuracy of the Preliminary Breath Test Device and how much Vodka, Ingested Five Hours Earlier, would be Required to Result in a Blood Alcohol Content of 0.209 Grams Per Liter of Breath in a person the Weight and Gender of Wilfong."  However, an appellant may not change the wording of an assignment of error.  Hamilton Dev. Co. v. Broad Rock Club, Inc., 248 Va. 40, 44, 445 S.E.2d 140, 143 (1994).

the evening in question, its effect on Wilfong's ability to control his actions and to observe and recall the events that occurred at the Santen-DeSantos residence, and to impeach Wilfong's testimony that he had consumed only one and one-half alcoholic drinks during the afternoon prior to the altercation at issue. Santen also asserts that, while Code § 18.2-267(E) provides that the result of a preliminary breath analysis shall not be admitted into evidence in any prosecution under Code §§ 18.2-266 and -266.1, it does not exclude such evidence from all criminal or civil actions.

During the initial hearing on the defendants' motions in limine and on the morning of trial, Santen proffered McGarry's testimony to the court. Santen stated that McGarry would testify that, in order to have a blood alcohol content of 0.209, Wilfong would have had to consume more than one and one-half alcoholic drinks during the five-to-six-hour period before the incident with Santen, and that Wilfong's level of intoxication would have affected his ability to recall what happened at the Santen-DeSantos residence. Santen further proffered that McGarry would testify that the type of machine used to administer the preliminary breath test "was accurate to a .005

percent, assuming it was regularly calibrated."[5]  However, at no time did Santen proffer any evidence that the actual machine used to test Wilfong had, in fact, been calibrated or was accurate.

Similarly, Santen proffered that the police officer who administered the preliminary breath test to Wilfong would testify "that he used the machine that was in his vehicle that was normally used in the course of his duties as a police officer" and that Wilfong registered a blood alcohol content of 0.209.  During the police officer's trial testimony, he was not asked any questions about the accuracy of the machine or whether it had been regularly calibrated.

Expert testimony is generally admissible in a civil case if it will assist the trier of fact in understanding the evidence or determining a factual issue.  Code § 8.01-401.3; <u>John v. Im</u>, 263 Va. 315, 319, 559 S.E.2d 694, 696 (2002); <u>Keesee v. Donigan</u>, 259 Va. 157, 161, 524 S.E.2d

---

[5] In his expert designation, Santen stated that McGarry would testify "as to the effect that alcohol will have on a person who has a blood alcohol content of .209; the amount of alcohol that is needed to cause a person with the age, height and weight of Defendant Wilfong to reach a .209 blood alcohol content; and the effect a .209 blood alcohol content would have in terms of the ability to control conduct and emotions."  He also indicated that McGarry would discuss the "method by which alcohol is measured by

645, 648 (2000); Tarmac Mid-Atlantic, Inc. v. Smiley Block Co., 250 Va. 161, 166, 458 S.E.2d 462, 465 (1995). However, admissibility depends on whether the expert testimony satisfies certain fundamental requirements, including the requirement that the testimony be based on an adequate factual foundation. Countryside Corp. v. Taylor, 263 Va. 549, 553, 561 S.E.2d 680, 682 (2002); Tarmac, 250 Va. at 166, 458 S.E.2d at 465-66.

In this case, McGarry's proffered testimony regarding the effect of Wilfong's alcohol consumption and the amount of alcohol Wilfong would have had to consume was premised upon the specific result of Wilfong's preliminary breath test. According to the proffer, the type of machine used to administer the test was accurate, and thus also the result, "assuming [the machine] was regularly calibrated." (Emphasis added.) But, there was no evidence, by way of proffer or otherwise, that the machine actually used to give Wilfong the preliminary breath test had been regularly calibrated. Thus, neither McGarry's testimony nor the numerical result of Wilfong's preliminary breath test was based on an adequate factual foundation. For that reason,

_____

the type of equipment used on the evening in question by the police who were involved in the incident."

11

we conclude that the circuit court did not err in excluding both McGarry's testimony and the result of the preliminary breath test.[6]

Finally, Santen argues that the circuit court erred in ruling as a matter of law that Tuthill, Sr., was not vicariously liable for the actions of his servant, Wilfong. However, "where master and servant are sued together in tort, and the master's liability, if any, is solely dependent on the servant's conduct, a verdict for the servant necessarily exonerates the master."  Roughton Pontiac Corp. v. Alston, 236 Va. 152, 156, 372 S.E.2d 147, 149 (1988) (citing Rakes v. Fulcher, 210 Va. 542, 549, 172 S.E.2d 751, 757 (1970); Whitfield v. Whittaker Mem'l Hosp., 210 Va. 176, 183, 169 S.E.2d 563, 568 (1969); Monumental Motor Tours, Inc. v. Eaton, 184 Va. 311, 314-15, 35 S.E.2d 105, 106 (1945); Virginia State Fair Ass'n v. Burton, 182 Va. 365, 368, 28 S.E.2d 716, 717-18 (1944); Barnes v. Ashworth, 154 Va. 218, 228-30, 153 S.E. 711, 713-14 (1930)).  Because the jury returned a verdict in favor of Wilfong and because we find no reason, based on the assignments of error presented in this appeal, to reverse

---

[6] Because the evidence concerning the result of the preliminary breath test was not based on an adequate factual foundation, it is not necessary to reach the issue

12

the judgment of the circuit court, we need not address this issue.

For these reasons, we will affirm the judgment of the circuit court.

<u>Affirmed</u>.

---

whether such evidence would be admissible in a civil action.