COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Kelsey and Senior Judge Bumgardner
Argued at Chesapeake, Virginia


CALVIN JOJUAN BELL

                                                            OPINION BY
v.        Record No. 0735-06-1                      JUDGE ROBERT J. HUMPHREYS
                                                          APRIL 17, 2007
COMMONWEALTH OF VIRGNIA


            FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                            Mark S. Davis, Judge

            S. Jane Chittom, Appellate Defender (Virginia Indigent Defense
            Commission, on briefs), for appellant.

            Rosemary V. Bourne, Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Calvin Jojuan Bell ("Bell") appeals his convictions for possession of cocaine with intent

to distribute, third offense, and possession of marijuana, in violation of Code §§ 18.2-248 and

18.2-250.1.  He contends the trial court abused its discretion in admitting into evidence: (1) a

forensic scientist's testimony concerning the contents of a certificate of analysis when the

scientist had no recollection of the certificate's contents, (2) the certificate of analysis because

the scientist had no recollection of the contents, and (3) the chemical test results from a machine

when the testing scientist had no first hand knowledge of the machine's calibration on the day of

the test.  Bell also contends that absent this inadmissible evidence, the evidence was insufficient

to support his convictions.  Finding no merit in Bell's first three questions presented, we decline

to address his final question presented, and affirm.

BACKGROUND

A. The Arrest

On appeal, a court reviews the evidence "in the light most favorable to the Commonwealth," as the prevailing party below, giving "it all reasonable inferences fairly deducible therefrom." Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). Viewed as such, the evidence proved that on November 4, 2003, Bell was driving a gold Pontiac at a high rate of speed southbound on Elm Avenue in Portsmouth. Bell suddenly made a left hand turn from Elm Avenue onto Lincoln Street, causing oncoming vehicles to "slam on" their brakes to avoid a collision. Officer Kevin Parker ("Parker") of the Portsmouth Police observed the near collision, and activated his emergency lights and siren in pursuit of Bell. Bell did not respond to Parker's attempts to stop him, and a high-speed chase through Portsmouth ensued.

After police were finally able to take Bell into custody, Parker conducted a search incident to arrest, and recovered from Bell's jacket pocket two bags containing what he suspected to be crack cocaine and marijuana. Police also discovered a partially-smoked cigar containing suspected marijuana, and $1,713 in U.S. currency. They did not recover any drug ingestion devices. Parker later packaged the suspected drugs and sent them to the Department of Forensic Science ("the Department") for analysis. A certificate of analysis later confirmed that the two bags contained 17.8 grams of marijuana and 11.498 grams of cocaine.

B. Proceedings in the Trial and Appellate Courts

Bell was previously convicted in a bench trial on the charges of possession of cocaine with intent to distribute, third or subsequent offense, and possession of marijuana. During Bell's October 5, 2004 trial, the court admitted the certificate of analysis into evidence over Bell's

objection, which was based on the Commonwealth's failure to comply with the mailing requirements of Code § 19.2-187.[1] The trial court then convicted Bell of both charges.[2]

Bell appealed to this Court. On December 5, 2005, we reversed the trial court and remanded for a new trial, holding that the Commonwealth had not complied with the mailing requirements of Code § 19.2-187, and thus that the certificate of analysis was inadmissible hearsay. We held, in other words, that the Commonwealth could not use the certificate of analysis as a substitute for the testimony of the forensic scientist who performed the analysis.[3]

Upon retrial, on March 6, 2006, the Commonwealth called Arthur Christy ("Christy"), the scientist who had performed the analysis, as a witness. The court qualified him as an expert in the analysis of chemical compounds and controlled substances. Christy described three general screening tests he performed in carrying out his analysis; namely, a "Marquis Reagent" test, and a "cobalt thyocyanide" test, both of which involve the use of liquids that turn certain colors when combined with cocaine, and a "thin layer chromatography test," which involves comparing the suspected sample of a controlled substance with a known sample. Christy also described using a "gas chromatograph-mass spectrometer" ("spectrometer"), which is used to analyze the structure of a suspected controlled substance. Based on these tests, Christy determined that the first substance was cocaine, and based on similar tests, he determined the second substance to be marijuana.

---

[1] The circuit court clerk's office delivered a copy of the certificate of analysis to Amarnath H. Meda, Bell's counsel, on September 29, 2004, six days before Bell's first trial. On October 1, 2004, four days prior to trial, the commonwealth's attorney's office delivered a copy of the certificate of analysis to Mr. Meda as part of its response to Bell's request for discovery.

[2] Bell was also convicted of attempting to elude and assault and battery on a law enforcement officer. He does not challenge those convictions on appeal.

[3] See Bell v. Commonwealth, 47 Va. App. 126, 622 S.E.2d 751 (2005).

On the day Christy performed the tests, he ran a "negative control" test on the spectrometer, which involves testing the machine to make sure that nothing remains from a previous sample. Another chemist had performed the daily calibration of the machine, to ensure all its electronic systems functioned properly. According to the Department's protocol, if the records indicate that the machines have not been calibrated that day, the Department is to retest all samples from that day. The Department did not retest any samples from that day.

Christy relied on the certificate of analysis to refresh his recollection during his testimony. After the Commonwealth established a proper foundation to allow use of the certificate, the following exchange took place between Christy and the prosecutor:

> COMMONWEALTH'S ATTORNEY: Did you [] prepare [a] written memorandum of your findings?
>
> CHRISTY: Yes, I have a certificate of analysis for this case.
>
> COMMONWEALTH'S ATTORNEY: And do you have an independent recollection of having performed these particular analyses? In other words, do you remember actually doing this particular analysis amongst all the thousands that you do?
>
> CHRISTY: No, I do not.
>
> COMMONWEALTH'S ATTORNEY: And do you use the lab certificate or the certificate of analysis to refresh your recollection?
>
> CHRISTY: Yes, I do.
>
> COMMONWEALTH'S ATTORNEY: And is that signed and dated by you and prepared by you?
>
> CHRISTY: Yes, it is.
>
> COMMONWEALTH'S ATTORNEY: And do you rely on that at least in part for your testimony here today?
>
> CHRISTY: For the most part, yes, I do.

Bell objected, arguing that Christy should not be able to refer to hearsay documents of which he had no independent recollection, during his testimony. Bell also objected to the admission of the certificate itself into evidence, reminding the trial court of our previous holding that the Commonwealth could not substitute the certificate for Christy's live testimony. Bell further objected to evidence obtained from the spectrometer, because Christy had not himself performed the calibrations of that machine on the day in question.

The trial court overruled Bell's objections and convicted him of both charges. The current appeal followed.

## ANALYSIS

### A. Christy's Use of the Certificate as a Present Recollection Refreshed

Bell argues on appeal, as he did at trial, that Christy should not have been permitted to use the certificate of analysis in his testimony, because Christy had no independent recollection of an otherwise hearsay document. We disagree.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E. 2d 838, 842 (1988). However, "[b]y definition, when the trial court makes an error of law, an abuse of discretion occurs." Bass v. Commonwealth, 31 Va. App. 373, 382, 523 S.E.2d 534, 539 (2000). The proponent of the evidence bears the burden of establishing by a preponderance of the evidence, the facts necessary to support its admissibility. See Bloom v. Commonwealth, 262 Va. 814, 821, 554 S.E.2d 84, 87 (2001).

The Commonwealth contends that Christy's use of the certificate to aid his testimony was proper, because it was a present recollection refreshed. When a witness is called to testify and is unable to remember all of the facts upon which they are supposed to testify, "counsel may . . .

- 5 -

refresh the witness's memory by allowing the witness to examine material, usually writings, which relate to the incident in question." Charles E. Friend, The Law of Evidence in Virginia, § 3-7 (6th ed. 2003). "Upon completion of his examination, the witness is required to testify *from independent memory*, which has supposedly returned to him upon sight of the refreshing material." Id. at § 3-7(a) (emphasis in original). "There is no requirement that the material itself be admitted into evidence, or *even that it be admissible*. However, the adverse party has the right to examine the material, to use it in cross-examining the witness, and to show it to the [fact finder]." Id. (emphasis added). This method of refreshing the witness' memory is commonly referred to as "present recollection refreshed." Id.[4]

Here, Bell argues that because Christy was unable to testify, from independent memory, regarding his performance of the analysis, he should not have been permitted to testify from the certificate. However, when asked by the Commonwealth's Attorney if he used the certificate of analysis to refresh his recollection, Christy responded: "Yes, I do." Viewing the evidence in the light most favorable to the Commonwealth, see Higginbotham, 216 Va. at 352, 218 S.E.2d at 537, the evidence supported the required factual determination that Christy used the certificate

---

[4] We note the distinction between a present recollection refreshed, which is merely a form of witness examination, and a past recollection recorded, which is a specific hearsay exception. Under this exception, a witness with no independent recollection of an incident may testify directly from notes or reports if the following requirements are met:

> (1) [t]he witness must have had firsthand knowledge of the event[;]
>
> (2) [t]he written statement must be an original memorandum made at or near the time of the event, when the witness had a clear and accurate memory of it[;]
>
> (3) [t]he witness must lack a present recollection of the event[;]
>
> (4) [t]he witness much vouch for the accuracy of the written memorandum.

The Law of Evidence in Virginia, § 3-7(b).

- 6 -

first to refresh his recollection, and then to testify from independent memory. Furthermore, Bell had the opportunity to examine the certificate, cross-examine Christy, and show the certificate to the trial court, if he so desired. The Commonwealth met its burden of proof that Christy used the certificate to refresh his recollection. Consequently, we hold that the trial court did not err in allowing Christy to testify after reference to the certificate to refresh his recollection.

### B. The Certificate of Analysis and Compliance With Code § 19.2-187

Bell next argues that the trial court erred by admitting the certificate of analysis into evidence, contrary to our earlier ruling in Bell v. Commonwealth, 47 Va. App. 126, 622 S.E.2d 751 (2005). In that opinion, we held that the Commonwealth had not complied with Code § 19.2-187, and thus the certificate was inadmissible hearsay. See id. at 140, 622 S.E.2d at 757. Because of our prior holding, on retrial the Commonwealth called Christy as a witness. Bell, however, continues to argue that the certificate is inadmissible, despite the fact that Christy testified at trial. In making this argument, Bell ignores the underlying purpose of Code § 19.2-187.

"A written report offered to prove the results of testing or of an analysis would generally be inadmissible hearsay evidence *unless the person who conducted the testing or prepared the report testified to authenticate the document and verify its contents*." Myrick v. Commonwealth, 13 Va. App. 333, 336-37, 412 S.E.2d 176, 178 (1991) (emphasis added). Code § 19.2-187 reads as follows:

> In any hearing or trial of any criminal offense . . . a certificate of analysis of a person performing an analysis or examination, performed in any laboratory operated by the Division of Consolidated Laboratory Services or the Division of Forensic Science . . . shall be admissible in evidence as evidence of the facts therein stated and the results of the analysis or examination referred to therein, provided (i) the certificate of analysis is filed with the clerk of the court hearing the case at least seven days prior to the hearing or trial and (ii) a copy of such certificate is mailed or delivered by the clerk or attorney for the Commonwealth to

counsel of record for the accused at least seven days prior to the hearing or trial upon request made by such counsel to the clerk with notice of the request to the attorney for the Commonwealth.

Code § 19.2-187 was enacted to allow for the introduction into evidence of a certificate of analysis without the forensic scientist who performed the tests being present, provided certain procedures were met. See Myrick, 13 Va. App. 333 at 337, 412 S.E.2d at 178. The rationale for requiring compliance with these safeguards is that the statute allows the introduction of otherwise inadmissible and unreliable hearsay. By testifying in court as to his findings and preparation of the certificate, and authenticating the certificate, Christy resolved any hearsay problems. Code § 19.2-187, therefore, is not implicated. Accordingly, by admitting the certificate of analysis, the trial court did not violate Code § 19.2-187, nor did it ignore our previous holding in Bell.[5] We thus affirm the judgment of the trial court on this issue.

## C. Calibration of the Spectrometer

Bell's third contention is that the results of the chemical analysis should be excluded, because Christy did not have first hand knowledge of whether the spectrometer had undergone calibration on that particular day. We disagree with Bell on this issue as well.

"Expert testimony is generally admissible . . . if it will assist the trier of fact in understanding the evidence or determining a factual issue. However, admissibility depends on whether the expert testimony satisfies certain fundamental requirements, including the requirement that the testimony be based on an adequate factual foundation." Santen v. Tuthill,

---

[5] Even if Code § 19.2-187 were implicated, the seven-day mailing requirement of this statute would be satisfied, because Bell's counsel received a copy of the certificate of analysis from the clerk's office on September 29, 2004, six days before the original trial. We released our first opinion on this matter on December 6, 2005. Bell's retrial did not occur until March 6, 2006. Therefore, upon retrial, Bell had notice of the contents of the certificate of analysis for over 17 months.

265 Va. 492, 498, 578 S.E.2d 788, 792 (2003) (citations omitted).  See also Tarmac Mid-Atlantic Inc. v. Smiley Block Co., 250 Va. 161, 166, 458 S.E.2d 462, 465 (1995).

Bell relies on Santen, in which the Supreme Court of Virginia held that an expert witness could not testify regarding the effect of an individual's alcohol consumption, and the amount of alcohol that individual would have had to consume to reach a certain blood alcohol content. Santen, 265 Va. at 499, 578 S.E.2d at 792.  This testimony was based upon the specific result of a preliminary breath test.  According to the proffered evidence, the "type of machine used to administer the test was accurate, and thus also the result, 'assuming [the machine] was regularly calibrated.'"  Id. at 498, 578 S.E.2d at 792.  Because the proponent of the testimony did not proffer that the machine had, in fact, been calibrated, the court held that the expert testimony was not based on an adequate factual foundation, and thus was inadmissible.  Id. at 499, 578 S.E.2d at 792.

Bell's reliance on Santen is misplaced.  There, the proponent of the testimony did not proffer any evidence to lay a factual foundation as to the machine's reliability.  In the case before us, Christy testified to numerous safeguard and quality assurance procedures employed by the Department to ensure the accuracy of the spectrometer's results.  The Department requires its laboratories to send records of daily spectrometer calibrations to Department headquarters.  If the records do not indicate that the spectrometer has been calibrated on a particular day, then Department policy requires all samples run on a particular day to be retested.  Christy was not required to retest samples from that day, nor had he ever been required to do so in five and a half years as a forensic scientist for the Department.  Furthermore, Christy performed a "negative control" test, in which he tested the machine to ensure that the test results would not be contaminated by the remnants of the previous sample.  Although Christy did not personally calibrate the spectrometer, the Commonwealth nevertheless presented evidence of its calibration.

- 9 -

Christy's expert testimony was therefore based on an adequate factual foundation, and thus admissible.

### D. Sufficiency of the Remaining Evidence

Bell's final contention on appeal is that absent the inadmissible evidence discussed above, the remaining evidence is insufficient to sustain the conviction. We have held above that the evidence in question *was* admissible, and thus we need not address this argument.

### CONCLUSION

We hold that the trial court did not err in permitting Christy to refer to the certificate of analysis during his testimony to refresh his recollection, in admitting the certificate of analysis into evidence, or in allowing Christy to testify as an expert regarding his analysis. Accordingly, we affirm the judgment of the trial court.

Affirmed.