COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Causey and Senior Judge Haley
Argued by videoconference

**PUBLISHED**

WILLIAM O. FLANNAGAN, JR.

OPINION BY
JUDGE RICHARD Y. ATLEE, JR.
AUGUST 16, 2022

v.       Record No. 0923-21-2

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF LOUISA COUNTY
Timothy K. Sanner, Judge

Ryan J. Rakness (Rakness & Wright PLC, on brief), for appellant.

Matthew P. Dullaghan, Senior Assistant Attorney General
(Jason S. Miyares, Attorney General, on brief), for appellee.

After a jury trial, the Circuit Court of Louisa County ("trial court") convicted appellant

William O. Flannagan, Jr. of first-degree murder, in violation of Code § 18.2-32, and use of a

firearm in the commission of a murder, in violation of Code § 18.2-53.1. On appeal, Flannagan

argues that the trial court erred by "excluding defense evidence of a preliminary breath test

conducted on [Flannagan] and testimony as to his intoxication based on that evidence." Because

we find that Flannagan's proffer was insufficient to establish the reliability of the preliminary

breath test machine, we affirm the decision of the trial court.

I. BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at

trial in the light most favorable to the Commonwealth, the prevailing party below." *Vay v.

Commonwealth*, 67 Va. App. 236, 242 (2017) (quoting *Smallwood v. Commonwealth*, 278 Va. 625,

629 (2009)). "This principle requires us to 'discard the evidence of the accused in conflict with that

of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth

and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

On July 3, 2019, Flannagan and Jason Ferguson attended a gathering in Devin Speh's garage. Flannagan had been drinking throughout the afternoon. Despite being friends, Flannagan and Ferguson argued several times throughout the evening. During the first argument, Flannagan pulled out a gun he had brought and "cocked the hammer back." In between arguing, Flannagan continued drinking.

During the final argument that evening, Flannagan pulled the gun out again, and he was waving it around. Because of the argument and the gun, the other people present felt uncomfortable and decided to leave. Speh told Flannagan and Ferguson it was "time to go." Speh was rolling up an extension cord when he heard a gunshot. He turned around; Speh saw Ferguson slump back into the chair. Flannagan was standing a few feet away from Ferguson with the gun in his hand pointed downward towards Ferguson. Speh ran into the home, locked the doors, and called 911. Flannagan left on foot. Ferguson died from the gunshot wound.

Officers dispatched to the scene saw an individual matching the suspect's description walking along the edge of the road. The officers observed the individual throw something, which turned out to be the gun used to shoot Ferguson. The officers arrested the individual, later identified as Flannagan. Flannagan was indicted for first-degree murder.

During his trial, Flannagan sought to elicit testimony about a preliminary breath test ("PBT")[1] that officers conducted when they arrested Flannagan. The Commonwealth objected to the relevance and admissibility. Flannagan explained that he intended to introduce the results of

---

[1] A preliminary breath test "determine[s] the probable alcoholic content" of a person's blood. Code § 18.2-267(A).

the PBT and have an expert testify about what that level of intoxication would indicate. This evidence was intended to challenge the premeditation element of the first-degree murder charge.

Flannagan explained that the officer that administered the test was prepared to testify that he had calibrated the PBT device five days before it was used on Flannagan. Flannagan also had the device's calibration logs. The trial court asked how that "establish[ed] the reliability of the test overall." Flannagan used *Santen v. Tuthill*, 265 Va. 492 (2003), and a 2013 Attorney General opinion to argue that the PBT results were admissible if there was evidence the device was properly calibrated.

The trial court asked if Flannagan's expert would testify that the PBT device was "reliable and that she can rely upon that in her field to render an opinion as to the blood alcohol content at the time of the reading." Flannagan indicated that he thought the expert would testify to that, but the Commonwealth "d[id] not believe that to be the case." The trial court explained that if the expert could testify the PBT is "reliable for establishing the blood alcohol content at that time," then the PBT results would be admissible, but if the expert could not, then the results were not admissible.

The trial court took a brief recess to allow Flannagan to check with the expert. When Flannagan returned, he reported that the expert could not opine on the reliability of the PBT device. The trial court explained that there were two types of tests; the test after arrest, which is admissible as evidence, and the preliminary test, like here, used by officers to establish probable cause. To admit the preliminary test results, a party must establish reliability, and if a party does not do so, the trial court cannot admit the results into evidence. Because Flannagan was unable to establish reliability, the trial court sustained the Commonwealth's objection.

The trial court allowed Flannagan to make a proffer to preserve the record. Flannagan proffered that the officer would testify that the device used was properly calibrated and that he

administered that test in accordance with his training. Flannagan argued that this should be sufficient under *Santen v. Tuthill*. He also proffered that if the results were admitted, the expert would testify what a blood alcohol content of .189, which was Flannagan's result, meant and how it would affect "judgment, attention, motor coordination, and reaction time."

Ultimately, the jury found Flannagan guilty of both first-degree murder and use of a firearm while committing murder. Flannagan now appeals his convictions to this Court.

## II. ANALYSIS

### A. *Standard of Review*

"[W]e review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (alteration in original) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197 (2010)). "In evaluating whether a trial court abused its discretion, . . . we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Id.* (alteration in original) (quoting *Carter v. Commonwealth*, 293 Va. 537, 543 (2017)).

B. *Preliminary Breath Tests*

Flannagan argues that the trial court erred by refusing to admit the PBT results. He argues that the PBT was sufficiently reliable[2] to admit the results because he proffered evidence that the device was recently calibrated.[3] We disagree.

Code § 18.2-267 regulates the use of PBTs in certain types of alcohol-related offenses. Code § 18.2-267(D) provides that the results of a PBT can be used to form the basis of probable cause for an arrest in certain types of driving under the influence ("DUI") offenses.[4] But those results cannot be used as evidence of guilt in prosecuting the offenses. Code § 18.2-267(E); *see also Stacey v. Commonwealth*, 22 Va. App. 417, 423 (1996). While Code § 18.2-267 prohibits the use of PBT results in the guilt phase of DUI offenses, the question of whether a PBT is admissible in cases other than those specifically prohibited under Code § 18.2-267 has not been resolved.[5]

---

[2] "When scientific evidence is offered, the court must make a threshold finding of fact with respect to the reliability of the scientific method offered, unless it is of a kind so familiar and accepted as to require no foundation to establish the fundamental reliability of the system." *Billips v. Commonwealth*, 274 Va. 805, 808-09 (2007) (quoting *Spencer v. Commonwealth*, 240 Va. 78, 97 (1990)).

[3] Flannagan also argues on brief that the PBT results were relevant to prove degree of intoxication and thus challenge whether the shooting was premeditated and deliberate. Although the Commonwealth's initial objection included a relevance objection, the trial court ruled only that Flannagan had not established the reliability of the PBT device to show an accurate blood alcohol content ("BAC"). Therefore, we address only the issue actually ruled upon by the trial court.

[4] These offenses are set out in Code § 18.2-267(A), and each requires proof of a specific BAC. *See, e.g.*, Code § 18.2-266 (driving with a BAC of .08 or more); Code § 18.2-266.1 (persons under twenty-one driving with a BAC of .02 or more).

[5] There is one exception. In *Hall v. Commonwealth*, 32 Va. App. 616, 627 (2000) (*en banc*), this Court held that the prohibition applied to aggravated voluntary manslaughter prosecutions because Code § 18.2-36.1 expressly required proof of a violation of Code § 18.2-266, which is specifically listed in Code § 18.2-267.

The issue arose in *Santen v. Tuthill*. In *Santen*, the trial court refused to admit the results of a PBT in a civil case because it concluded that PBTs were not sufficiently reliable. 265 Va. at 495. The defendant proffered expert testimony "that the type of machine used to administer the preliminary breath test 'was accurate to a .005 percent, assuming it was regularly calibrated.'" *Id.* at 498. Although the officer would testify that the PBT machine was the one he regularly used, there was no evidence (by proffer or by testimony) that the machine had been regularly calibrated. *Id.* On appeal, the Supreme Court declined to decide whether a PBT was admissible in a civil case. *Id.* at 499 n.6. Instead, it concluded that the defendant had not laid a proper foundation because the accuracy of the machine was conditioned on regular calibration and there was no evidence that the machine used had been regularly calibrated. *Id.* at 498-99.

Relying on *Santen*, Flannagan contends that he has proffered evidence of calibration, which is sufficient to provide an adequate factual foundation for the results of the PBT. But Flannagan's argument focuses on what was missing from the proffer in *Santen* and ignores what was proffered. In *Santen*, the defendant proffered expert testimony that the machine was accurate if calibrated, but he did not proffer evidence of calibration. This case is the opposite. Flannagan offered evidence of calibration, but his expert could not testify that a properly calibrated PBT machine was reliable to give an accurate BAC. During oral argument before this Court, Flannagan conceded that he had no one to say that a calibrated machine is reliable and accurate. Accordingly, while he proffered evidence that was missing in *Santen*, Flannagan nevertheless failed to provide a crucial piece necessary to establish the reliability of the PBT device to give an accurate blood alcohol content reading.

Flannagan argues that there is nothing in the statute that states or implies the PBT results are unreliable. We disagree. Flannagan's argument fails to consider the purposes for which the statute permits the use of PBT results. The statute permits the use of PBTs as "a preliminary

analysis of the alcoholic content of the blood" to provide the basis of probable cause. Code § 18.2-267(E). But it does not permit the results to be used to prove guilt or innocence. *Id.* Thus, the General Assembly considers PBTs reliable in the context of determining whether there is alcohol in the blood, but not so reliable when it comes to determining the *level or amount* of alcohol in the blood. *See Stacey*, 22 Va. App. at 422 ("[T]he test is sufficiently reliable to prove that a person has consumed alcohol and that the fact of consumption may furnish reason to believe that a person is intoxicated."); *Aloudah v. Commonwealth*, No. 0328-17-4, slip op. at 7 (Va. Ct. App. Feb. 13, 2018)[6] ("The General Assembly has thus 'recognized that this test is reasonably trustworthy to show that a person has consumed alcohol for purposes of determining whether probable cause exists to make an arrest,' but not reliable enough to serve as direct evidence of criminal liability."); Code § 18.2-267 (PBT results admissible to prove probable cause but not for determining guilt in cases requiring a specific BAC).

Flannagan does not seek to show simply that he had consumed alcohol. He seeks to admit the results to show his BAC was .189 and that he was *so* intoxicated that it affected his decision making. Even assuming without deciding that PBT results are admissible in those cases where not specifically prohibited by statute, Flannagan's proffer was not sufficient to demonstrate that a properly calibrated machine was reliable to give an accurate BAC. Therefore, the trial court did not err by finding that Flannagan failed to establish the reliability of the PBT

---

[6] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Blowe v. Commonwealth*, 72 Va. App. 457, 468 n.10 (2020) (quoting *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012)).

device.  Accordingly, the trial court did not err by excluding the PBT results and the testimony based on those results.

### III. CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

*Affirmed.*