COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, O'Brien and Lorish


JOSIAH TYREE HILSER

MEMORANDUM OPINION*

v.      Record No. 1499-24-3      PER CURIAM
                                   MAY 6, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF RUSSELL COUNTY
Michael L. Moore, Judge

(B. Laken Shuler; Bruce H. Russell, II, P.C., on briefs), for
appellant.

(Jason S. Miyares, Attorney General; Matthew J. Beyrau, Assistant
Attorney General, on brief), for appellee.


Josiah Tyree Hilser (appellant) was convicted by a jury of aggravated malicious wounding

and use of a firearm in the commission of a felony. On appeal, he contends that the evidence is

insufficient to support his conviction because the Commonwealth did not prove that the victim had

a permanent and significant physical impairment as a result of the crime, and he was acting in

self-defense. He also argues that the court erred by excluding his impeachment evidence and by

granting a jury instruction defining physical impairment. After examining the briefs and record, the

panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without

merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Meade v. Commonwealth*,

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

74 Va. App. 796, 802 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). "Accordingly, we regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Id.*

Appellant lived with Desiree Chapman, who previously had been involved with Tyler Puckett. During the summer of 2021, appellant accused Chapman of "cheating on him" when Chapman went to a bowling alley with Puckett. In September, Chapman went to Puckett's residence. Appellant became upset when he learned that Chapman had been to see Puckett, and he sent Puckett messages telling him not to "text [his] girl" and to "fuck off." He also threatened to "fuck [Puckett] up."

On the early morning of November 1, Puckett was "driving around" even though he was feeling "buzzed" from drinking. Puckett drove into the parking lot of the apartment complex where appellant and Chapman lived. He parked at the end of the lot near their apartment and sat in his car with his music "blaring." Around the same time, Kathy Johnson, who lived across the hall from appellant and Chapman, heard appellant leave his apartment, walk down the stairs, and go outside.

Puckett decided to leave. As he was pulling out of the parking spot, Johnson saw appellant "come off the stairs" and approach Puckett's car. Appellant yelled at Puckett not to drive away. Puckett stopped his car and exited.

Puckett testified that appellant shot at him as soon as he stepped out of his car. Puckett heard gunfire and then realized that he had been shot. He hid behind a vehicle until appellant went back inside the building.

Puckett drove to a hospital across the street and ran into the emergency room. Melissa Barton, who was working at the front desk, testified that when Puckett arrived, he was "bleeding pretty much everywhere" and his mouth was turning blue. After Puckett was stabilized at the hospital, he was transferred to a larger facility for more advanced medical care.

Johnson, who saw the entire incident from her window, testified that appellant began shooting at Puckett immediately after Puckett exited his car. She heard multiple gunshots and saw muzzle flashes. Johnson stated that she could see Puckett clearly and he did not have a gun. After the shooting, she called 911 and reported that appellant shot at Puckett and then returned to his apartment.

Sheriff's Investigator Scotty Whited found appellant hiding in his apartment. Appellant admitted shooting Puckett and initially told the police that the gun he used was in the living room area. He later stated that he threw the gun out the window, but the police were unable to find it. They did find an empty .40 caliber magazine and a holster inside the apartment. Investigator Whited also recovered eight .40 caliber cartridge casings and one bullet fragment in the parking lot where the shooting occurred. He did not see evidence of a second firearm, and no weapons were found during a search of Puckett's vehicle. Testing revealed gunshot residue on both of appellant's hands, consistent with having fired a gun.

Puckett remained in the hospital for eight days, underwent surgery for a collapsed lung, and sustained permanent scars related to the bullet wounds and the surgery. At the time of trial, he still suffered "nerve problems" in his arm.

The Commonwealth moved *in limine* to exclude any evidence of Puckett's pending charge of brandishing a firearm. The Commonwealth argued that Puckett was not charged until nine months after the shooting incident and evidence about an unrelated brandishing charge was irrelevant. The court ruled that it would not admit the evidence unless the Commonwealth "opened the door in some way."

At trial, Puckett was asked whether he ever became violent after drinking alcohol, and he said that he did not. Appellant then sought to call Travis Kiser to testify that Puckett threatened him with a gun in a grocery store parking lot. Appellant argued that Kiser's testimony would impeach

Puckett's claim that he never pointed a gun at anyone and was relevant to appellant's claim that he was acting in self-defense when he shot Puckett. The Commonwealth objected, arguing that the brandishing incident was wholly unrelated to the current charges, and appellant, not the Commonwealth, "opened the door" on the issue. The court agreed and excluded the evidence of Puckett's brandishing charge, finding that the evidence would confuse the jury, was "remote in time," and had "limited probative value."

At the close of the Commonwealth's case, appellant unsuccessfully moved to strike the evidence.

During the defense case, David Wayne Dale, Jr. testified that he was inside a van in the parking lot when he heard gunfire. Dale heard a small caliber weapon fire first followed by a larger caliber weapon. He stated that he saw a man "with his arm up" pointing toward appellant. Dale acknowledged that he did not see the man with a weapon and the only person he saw fire a gun was appellant. Contradicting the Commonwealth's evidence, Dale stated the shooting occurred around 6:30 p.m. and that the police did not arrive until five hours later.

Chapman testified that Puckett was "not himself when he's drinking," but she had never known him to be physically violent toward her or anybody else. She stated that she did see Puckett with a gun when she visited him at his house, but she could not recall when that occurred.

At the close of the case, the court denied appellant's renewed motion to strike.

Appellant objected to the Commonwealth's proffered jury instruction defining "physical impairment" for purposes of the aggravated malicious wounding charge. The instruction stated: "Physical impairment is defined as any physical condition, anatomic loss, or cosmetic disfigurement which is caused by bodily injury, birth defect, or illness." The Commonwealth noted that the wording of the instruction had come from *Newton v. Commonwealth*, 21 Va. App. 86 (1995), and was a correct statement of the law. The court granted the instruction.

The jury found appellant guilty of aggravated malicious wounding and use of a firearm in the commission of a felony but acquitted him of attempted murder. The court denied appellant's motion to set aside the jury's verdict.

## ANALYSIS

### I. Sufficiency of the evidence

Appellant argues that the evidence failed to prove Puckett suffered a permanent and significant physical impairment, as required by Code § 18.2-51.2(A). He also contends that the evidence established that he acted in self-defense. "In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)). "In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Thus, we will affirm the judgment of the trial court unless that judgment is 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Kelly*, 41 Va. App. at 257).

Appellant argues that the court erred by denying his motion to set aside the jury's verdict "because the evidence was insufficient to support his convictions." "When reviewing the sufficiency of the evidence, '[t]he judgment of the [fact finder] is presumed correct and will not

be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (first alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment . . . .'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Code § 18.2-51.2(A) provides:

> If any person maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill, he shall be guilty of a Class 2 felony if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment.

Under Code § 18.2-51.2, a "physical impairment" is "any physical condition, anatomic loss, or cosmetic disfigurement." *Lamm v. Commonwealth*, 55 Va. App. 637, 644 (2010) (quoting *Newton*, 21 Va. App. at 90). "To prove an injury is permanent, the Commonwealth need not present definitive testimony that a victim's injuries will never improve, but instead can leave it to the common sense of the [fact finder] to determine if the injuries are permanent." *Id.* at 644-45. This Court has found that scarring may constitute a significant and permanent physical impairment. *See Newton*, 21 Va. App. at 90.

Appellant acknowledges that *Newton* specifically includes scarring as a "significant and permanent physical impairment," and he concedes that we are bound by that holding under the inter-panel accord doctrine. *See Reedy v. Commonwealth*, 77 Va. App. 81, 102 n.10 (2023). He asked us, however, to consider an en banc review of this case, for the purpose of overruling *Newton*. We declined to do so. *See Hilser v. Commonwealth*, No. 1499-24-3 (Va. Ct. App. Jan. 2, 2025) (order).

Here, the evidence proved that Puckett suffered permanent and significant impairment from the shooting. At the time of trial, Puckett was still experiencing nerve pain and had four permanent scars from the bullet wounds and the resulting surgery. With this evidence, a reasonable fact finder could conclude that Puckett's injury was significant and permanent.

Appellant also argues that the evidence was insufficient to support his conviction because the Commonwealth did not prove that he acted maliciously when he shot Puckett; he was acting in self-defense.

"To be convicted of malicious wounding, the Commonwealth must prove that the defendant maliciously stabbed, cut, or wounded 'any person or by any means cause[d] him bodily injury, with the intent to maim, disfigure, disable, or kill.'" *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013) (alteration in original) (quoting Code § 18.2-51). "The element in malicious wounding that distinguishes it from unlawful wounding is malice, expressed or implied . . . ." *Hernandez v. Commonwealth*, 15 Va. App. 626, 631 (1993). "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. [Malicious intent to wound] may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury." *Burkeen*, 286 Va. at 259 (alteration in original) (footnote omitted) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)).

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." *Hughes v. Commonwealth*, 39 Va. App. 448, 464 (2002) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." *Bell v. Commonwealth*, 66 Va. App. 479, 486 (2016) (quoting *Smith*, 17 Va. App. at 71). The fact finder must determine whether the appellant acted in reasonable apprehension of bodily harm. *See, e.g.*, *Diffendal v. Commonwealth*, 8 Va. App.

417, 421 (1989) (explaining that a person "is privileged to exercise reasonable force" when he or she "reasonably apprehends bodily harm by another" and "exercise[s] reasonable force to repel the assault"). Self-defense also requires a finding that the force used by the appellant was reasonable in relation to the threatened harm. *See Caison v. Commonwealth*, 52 Va. App. 423, 440 (2008).

"Virginia law recognizes two forms of self-defense to criminal acts of violence: self-defense without fault ('justifiable self-defense') and self-defense with fault ('excusable self-defense')." *Jones v. Commonwealth*, 71 Va. App. 70, 94 (2019) (quoting *Bell*, 66 Va. App. at 487). "Any form of conduct by the accused from which the fact finder may reasonably infer that the accused contributed to the affray constitutes 'fault.'" *Id.* at 94-95 (quoting *Smith*, 17 Va. App at 71). Excusable self-defense occurs where an accused, "although in some fault in the first instance in provoking or bringing on the difficulty, when attacked retreats as far as possible, announces his desire for peace, and [injures] his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm." *Avent v. Commonwealth*, 279 Va. 175, 200 (2010).

The evidence proved that appellant instigated the confrontation and did not have a reasonable apprehension of death or bodily harm when he shot Puckett. Puckett was leaving the parking lot when appellant urged him to stop. Johnson testified that appellant shot Puckett, that Puckett was unarmed, and that she did not see Puckett reach for a weapon before appellant shot him. Puckett confirmed that he was unarmed and did not threaten appellant in any way. "'[B]are fear that a person intends to inflict serious bodily injury on the accused, however well-grounded,' is insufficient without an overt act." *Jones*, 71 Va. App. at 86 (alteration in original) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 975 (1977)). Although appellant's witness, David Dale, testified that he observed a man "with his arm up" pointing at

appellant, Dale was unable to identify the man, and the testimony directly contradicted the other eyewitnesses, Johnson and Puckett. Likewise, numerous witnesses disputed Dale's estimation that the crime occurred at 6:30 p.m. and that it took the police five hours to respond to the scene. It is the jury's prerogative to determine witness credibility and disregard testimony accordingly. *See Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (explaining that "[d]etermining the credibility of witnesses . . . is within the exclusive province of the jury" (second alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993))). Thus, the record supports the jury's conclusion that appellant did not act in self-defense.

## II. Impeachment Evidence

Appellant contends that the court erred by excluding his "impeachment evidence of the victim's witness testimony." "Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)).

"[W]e cannot substitute our judgment" for that of the trial court, and we instead "determine 'whether the record fairly supports the trial court's action.'" *Clark v. Commonwealth*, 73 Va. App. 695, 705 (2021) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). Moreover, "[t]he responsibility for balancing the probative value versus the prejudicial effect rests in the sound discretion of the trial court." *Kenner v. Commonwealth*, 299 Va. 414, 424 (2021).

"It is a fundamental principle of jurisprudence that evidence which is not relevant is not admissible." *Warren v. Commonwealth*, 76 Va. App. 788, 802 (2023) (quoting *Perry v. Commonwealth*, 61 Va. App. 502, 509 (2013)), *aff'd*, 303 Va. 60 (2024). "'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or

less probable than it would be without the evidence." Va. R. Evid. 2:401. "For evidence to be admissible it must relate and be confined to the matters in issue and tend to prove an offense or be pertinent thereto." *Warren*, 76 Va. App. at 802 (quoting *McMillan v. Commonwealth*, 277 Va. 11, 22 (2009)). "While evidence may be relevant in that it tends to establish the proposition for which it was offered, in order to be admissible, it must also be material," that is "tend[ing] to prove a matter that is properly at issue in the case." *Commonwealth v. Proffitt*, 292 Va. 626, 634-35 (2016) (quoting *Brugh v. Jones*, 265 Va. 136, 139 (2003)). "Indeed, this materiality requirement is built into Rule 2:401's language, which states that the evidence must be probative of a 'fact in issue.'" *Id.* at 635. "The proponent of the evidence bears the burden of establishing[,] by a preponderance of the evidence, the facts necessary to support its admissibility." *Perry*, 61 Va. App. at 509 (alteration in original) (quoting *Bell v. Commonwealth*, 49 Va. App. 570, 576 (2007)).

Evidence is material—not collateral—when the offering party "would be entitled to prove it in support of his case." *Massey v. Commonwealth*, 67 Va. App. 108, 126 (2016) (quoting *McGowan v. Commonwealth*, 274 Va. 689, 695 (2007)). Evidence is collateral if it provides "no link in the chain of evidence" nor "intimate connection with the main fact." *Id.* (quoting *McGowan*, 274 Va. at 695). "Evidence . . . which cannot be used for any purpose other than for impeachment . . . is certainly collateral to the main issue." *Id.* (alterations in original) (emphasis omitted) (quoting *McGowan*, 274 Va. at 695). Here, appellant sought to admit evidence that Puckett had been charged with brandishing a firearm at another person nearly a year after appellant shot Puckett. The evidence appellant sought to admit was merely collateral and not relevant to any issues at trial because it provides "no link in the chain of evidence" nor "intimate connection with the main fact." *Id.* (quoting *McGowan*, 274 Va. at 695). Accordingly, we find no abuse of discretion with the court's ruling.

III. Jury Instruction

Appellant argues that the court erred by granting the Commonwealth's jury instruction defining physical impairment. "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Conley v. Commonwealth*, 74 Va. App. 658, 674-75 (2022) (quoting *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019)). "We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Id.* at 675. "[W]hether a jury instruction accurately states the relevant law is a question of law that we review de novo." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)). "The facts regarding a challenged instruction are viewed 'in the light most favorable to the proponent of the instruction.'" *Davison v. Commonwealth*, 69 Va. App. 321, 327 (2018) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)), *aff'd*, 298 Va. 177 (2019).

Here, the Commonwealth's proffered instruction correctly stated the law and accurately defined "physical impairment." Although the instruction did include the language of cosmetic disfigurement caused by "birth defect," other instructions told the jury that Puckett's injuries had to have been caused by appellant's actions. Specifically, Instruction 12 stated that the Commonwealth was required to prove that as a result of the shooting, Puckett was severely injured and "was caused to suffer permanent and significant physical impairment." "[It] is the duty of the jury to consider the instructions as a whole and in the light of the evidence applicable to the issues presented." *Patrick v. Commonwealth*, 50 Va. App. 650, 654 (2007) (alteration in original) (quoting *Rollston v. Commonwealth*, 11 Va. App. 535, 541 (1991)). When read together, the jury instructions properly informed the jury that the shooting must have caused

Puckett's injuries.  Accordingly, we conclude that the court did not err in granting the

Commonwealth's instruction.

CONCLUSION

For these reasons, we affirm the circuit court's judgment.

*Affirmed.*