COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Elder, Beales and Senior Judge Willis
Argued at Salem, Virginia


WESLEY BRIAN EARNEST

                                                          OPINION BY
v.        Record No. 0366-11-3              JUDGE JERE M.H. WILLIS, JR.
                                                          DECEMBER 4, 2012

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

Joseph A. Sanzone (Sanzone & Baker, P.C., on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


On appeal from his convictions of first-degree murder in violation of Code § 18.2-32 and

the use of a firearm in the commission of first-degree murder in violation of Code § 18.2-53.1,

Wesley Brian Earnest contends the trial court erred (1) in refusing to allow Dr. Jennifer Mnookin to

testify as an expert witness in fingerprint methodology, and (2) in refusing to allow Dr. Mnookin to

offer an opinion contradicting the testimony of an expert witness for the Commonwealth.  We

affirm the judgment of the trial court.

Background

Earnest and the victim, his wife, were undergoing a contentious divorce.  On December

20, 2007, the victim's body was found on the floor in her home.  She had died from a gunshot

wound to her head.  Officers recovered a firearm lying on the sleeve of the coat that she was

wearing.  They also found a typewritten note located several feet from her body.  The victim's

fingerprints were not found on the note.  However, Kenneth Riding, a retired forensic scientist

who specialized in analyzing latent fingerprints, testified that two latent fingerprints found on the note were Earnest's fingerprints.

Andrew Johnson, a forensic scientist specializing in fingerprint analysis and impression analysis, confirmed Riding's fingerprint examination and identification. Like Riding, Johnson opined that the latent prints on the note were made by Earnest.

Earnest tendered Dr. Jennifer Mnookin as an expert witness in "fingerprint identification methods and the history" and "the use of fingerprint identification methods." The Commonwealth objected, arguing that Dr. Mnookin was not a "fingerprint examiner" and should not be permitted to opine regarding the fingerprint analyses performed in the case.

Upon voir dire to determine her qualifications, Dr. Mnookin testified that she has an undergraduate degree in social science, a law degree, and a Ph.D. in the history and social study of science and technology. She teaches evidence at UCLA School of Law. She testified that she has numerous affiliations with work groups and committees and has published articles related to "the adequacy of the research foundation and scientific basis for latent fingerprint identification." She stated she was acquainted with the comparisons conducted in Earnest's case, but she testified, "I am not a fingerprint examiner and . . . would not ever make a statement about whether or not two prints did or did not match. That is outside of my expertise." She also acknowledged she had never performed a fingerprint analysis.

Earnest proffered that Dr. Mnookin would testify that there was no statistical or clinical basis for the claim that a partial latent fingerprint can be matched to a known fingerprint using the methods testified to by the Commonwealth's expert fingerprint witnesses. He proffered that she would testify that studies are ongoing but incomplete in this area and that she would testify concerning an unrelated case (the Mayfield case) and a report (the Galton report).

The trial court ruled that expert witness testimony would be admissible if offered by a qualified expert who could testify "regarding the methodology employed in this particular case or has an opinion as to the particular analysis conducted by [the Commonwealth's] experts who have testified or an expert who has independently conducted his or her own examination, but I don't see it yet." It held that despite Dr. Mnookin's extensive education and expertise in certain areas, she was not qualified as an expert in the field of fingerprint analysis. It noted that it appeared that the purpose of her testimony was to discuss other cases and studies which would involve inadmissible hearsay.

Earnest sought to have Dr. Mnookin refute a reference by Johnson to the Galton report. In addressing the history of fingerprint analysis as a form of identification, Johnson had referred to the Galton report, noting its assertion that "the chances of any two people having the same fingerprint are one in sixty-six billion." Earnest did not object to this testimony. The trial court noted that Johnson's reference to the Galton report was "not relied upon as a basis for any opinion," but rather was background or a matter of history concerning fingerprint analysis. The trial court refused to allow Dr. Mnookin to testify about the Galton report, ruling that this would involve inadmissible hearsay.

Earnest sought to refute Johnson's testimony that "nobody has ever found two different individuals on the planet with the same fingerprint." He proffered that he wanted to question Dr. Mnookin about an unrelated incident, referred to at trial as the "Mayfield case." The trial court ruled that discussion of the Mayfield case would be rejected as hearsay.

Analysis

> Whether to permit a witness to qualify as an expert on a given
> subject matter is an issue submitted to the discretion of the trial
> court, and on appeal we will not reverse the trial court's ruling in

- 3 -

this regard unless it plainly appears that the witness was not qualified.

Conley v. Commonwealth, 273 Va. 554, 560, 643 S.E.2d 131, 134 (2007).

"The record must show that the proffered expert possesses sufficient knowledge, skill, or experience to render him competent to testify as an expert on the subject matter of the inquiry." King v. Sowers, 252 Va. 71, 78, 471 S.E.2d 481, 485 (1996).

Earnest contends the trial court abused its discretion in rejecting Dr. Mnookin as an expert witness. He did not propose her as an expert in fingerprint analysis. Indeed, Dr. Mnookin testified that she would not undertake to perform, confirm, or refute a fingerprint analysis. Rather, her expertise lay in an academic evaluation of various studies on the subject of fingerprint analysis. Her proffered testimony would not have addressed or rebutted the actual analyses performed by the Commonwealth's experts, but would merely have addressed generally the "statistical or clinical bases" for the assertion that a latent fingerprint can be matched to a known fingerprint.

The law in Virginia is well settled that fingerprint analysis by a qualified examiner is competent evidence. See, e.g., Avent v. Commonwealth, 209 Va. 474, 478, 164 S.E.2d 655, 658 (1968) ("'The accuracy of fingerprint identification is a matter of common knowledge and no case has been cited, and we have found none, where identification so established has been rejected.'" (quoting Stevenson v. United States, 380 F.2d 590, 592 (D.C. Cir. 1967))).

To the extent that Dr. Mnookin's proffered testimony was relevant, as going to the weight to be given to the fingerprint analyses, the proffer set forth no foundation showing the proposed testimony to be other than hearsay. The trial court did not abuse its discretion in rejecting that proffer.

Earnest also contends the trial court erred in not allowing Dr. Mnookin to refute Johnson's statements that "the chances of any two people having the same fingerprint are one in sixty-six

billion" and "nobody has ever found two different individuals on the planet with the same fingerprint."

"'The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Bell v. Commonwealth, 49 Va. App. 570, 576, 643 S.E.2d 497, 500 (2007) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)).

Earnest did not object to the admission of Johnson's statements, but he elicited on cross-examination that Johnson had read only sections of the Galton report. However, according to Earnest's proffer, the most Dr. Mnookin could have stated was that she knew of no documentation supporting Johnson's assertions. This would have been hearsay. Earnest proffered that Dr. Mnookin would address details about the Galton report and the Mayfield case. This also would have involved hearsay. "'[E]xperts in criminal cases must testify on the basis of their own personal observations or on the basis of evidence adduced at trial.'" Wright v. Commonwealth, 245 Va. 177, 197, 427 S.E.2d 379, 392 (1993) (quoting Buchanan v. Commonwealth, 238 Va. 389, 416, 384 S.E.2d 757, 773 (1989)).

> In Simpson v. Commonwealth, 227 Va. 557, 566, 318 S.E.2d 386, 391 (1984), we noted that Code § 8.01-401.1, which permits "an expert to base his opinion on facts made known or perceived by him at or before trial, whether admissible in themselves or not, provided they are facts of a type normally relied on by other experts in the field," is limited by the express language of the statute to civil cases. In Simpson, we declined the Commonwealth's invitation to judicially expand this rule to criminal prosecutions. Id.

Sanders v. Commonwealth, 282 Va. 154, 159 n.1, 711 S.E.2d 213, 215 n.1 (2011).

The proposed testimony by a witness unqualified as an expert in the field concerning reports or cases unrelated to the fingerprint analyses at issue in the case did not tend to establish or rebut a fact at issue. It would not have refuted the conclusions reached by the two expert

fingerprint analysts.  Accordingly, the trial court did not abuse its discretion in refusing to allow

Dr. Mnookin to testify as to the Mayfield case and the Galton report.

We affirm the judgment of the trial court.

<u>Affirmed.</u>