COURT OF APPEALS OF VIRGINIA

Present: Judges Causey, Friedman and Senior Judge Clements
Argued at Richmond, Virginia

STEPHON CEPEDA MARSH

v.       Record No. 0424-23-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION\* BY
JUDGE FRANK K. FRIEDMAN
FEBRUARY 4, 2025

FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
H. Thomas Padrick, Jr., Judge Designate

Samantha Offutt Thames, Senior Appellate Attorney (Virginia
Indigent Defense Commission, on briefs), for appellant.

Kimberly A. Hackbarth, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

Following a jury trial, Stephon Cepeda Marsh was convicted of rape, extortion, and animate object sexual penetration. On appeal, Marsh argues that the trial court abused its discretion in three ways. First, Marsh suggests it was error to bar him from "introducing evidence of, or making any reference to, a child conceived, or possibly conceived, by the parties in a previous sexual encounter in the Fall of 2020." Second, Marsh contends that the trial court erred by permitting the victim to remain in the courtroom during the trial. Finally, Marsh argues that the trial court erred in limiting his voir dire of the jury. Finding no abuse of discretion, we affirm.

---

\* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, we discard any of appellant's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

*a. The trial court's pre-trial evidentiary rulings*

Before trial, Marsh filed a notice of his intent to introduce evidence of the victim's (T.B.) prior sexual conduct with him under Code § 18.2-67.7. The trial court held a hearing and heard evidence about the nature of the relationship between T.B. and Marsh. At the hearing, T.B. testified that she and Marsh began dating in late 2016. She explained that she and Marsh had been in a romantic relationship and had two children together. She testified that the last time she had consensual sex with Marsh was in September or October of 2020 and that she moved to her own apartment shortly thereafter. Marsh, on the other hand, stated that the consensual sexual relationship continued into January of 2021 and argued that the incident giving rise to his convictions was consensual. The trial court granted Marsh's motion to introduce evidence of his prior sexual relationship with T.B., finding it was relevant to the issue of consent.

The Commonwealth then filed a motion *in limine* seeking to exclude evidence of T.B.'s possible pregnancy following her last consensual sexual encounter with Marsh. The Commonwealth argued that any evidence about a possible pregnancy months before the incident was irrelevant, and even if relevant, it was unduly prejudicial. Marsh argued that evidence of a

---

[1] Portions of the record in this case were sealed. "To the extent that we mention facts found only in the sealed record, we unseal those specific facts, finding them relevant to our decision." *Daily Press, LLC v. Commonwealth*, 301 Va. 384, 393 n.1 (2022).

possible pregnancy was relevant to show the "nature of their relationship." In the trial court, Marsh's counsel further argued that an unwanted pregnancy could "make [T.B.] so angry with [Marsh] that she would fabricate and say this was a forcible sexual encounter."

The trial court granted the Commonwealth's motion, ruling that evidence of a possible pregnancy in the fall of 2020 was not relevant to the issue of consent in January 2021. The trial court also found that assuming the pregnancy evidence was relevant, its prejudicial effect substantially outweighed the probative value of the evidence. The trial court explained:

> I don't think the presence of a pregnancy or a termination of a pregnancy, I don't think that has much probative value at all. I think it's very light probative value. I do think it has huge prejudicial effect were it to come out that the pregnancy was terminated. If there was a miscarriage, it has no---its neither here nor there, and if she had the baby, that's contrary to what you're saying, so I have to assume you're thinking that she must have terminated it, and that shows she was mad at him for getting her pregnant. That's a stretch, especially if it happened in September or October. I just think it's a very thin re[e]d fraught with a lot of difficulties.

The trial court further found that "it's speculative to say she was even upset at him about that, and you want to posit speculation, oh, yeah, that could be what it was, she was pregnant, she didn't want the child, she blames him, she waits three months, then she accuses him. That's all speculation."

*b. The trial court's exclusion of certain voir dire questions*

Before trial, the court asked the parties to submit proposed voir dire questions for review. After hearing arguments, the trial court refused certain questions from each side. The trial court excluded the following four questions proposed by Marsh, which he now challenges on appeal:

1. Whether anyone has children from a prior relationship.

2. Whether anyone struggled with a long-term relationship ending, and the general fall out from that termination.

3. Whether anyone has difficulty co-parenting.

4. Whether anyone works with low-income families or otherwise has specialized knowledge of low-income families.

- 3 -

The trial court excluded some questions because they were "duplicative of other questions."[2] The trial court also found that, if some of the excluded questions were allowed, then the jury "w[ould] be fully cognizant of the relationship between the parties. I think its surplusage and it gets into too much of the juror's personal life and it goes beyond the statute and . . . the caselaw as to what's allowed in voir dire." The trial court further found that certain excluded questions were "just kind of like a preview and I just think that these questions go beyond what's allowed for voir dire." The trial court also noted that "all this is subject to cross-examination of the alleged victim."

*c. The evidence adduced at trial*

Marsh and T.B. started dating in 2016 and had two children together. The first child was born in 2017. T.B. testified that after her first child was born, Marsh became verbally and physically abusive, including pushing her down and grabbing and choking her.

The second child was born in 2019. T.B. testified that her relationship with Marsh began to further deteriorate by this point. T.B. stated that Marsh was not helping to raise the children and was having affairs with other women, and she "just had had enough." T.B. testified that Marsh threatened to have her children taken away if she left the relationship or did not spend time with him as he wanted.[3] T.B. explained that she distrusted child protective services based on her own childhood experiences. She also noted co-parenting with Marsh was a challenge: "to co-parent . . . I

---

[2] As relevant to the questions Marsh challenges on appeal, the trial court permitted the following questions:

> Anyone have a difficult relationship with your prior partner specifically around the issue of parenting and responsibilities?

> Anyone—custody fights with former partner?

[3] The record includes numerous text messages between Marsh and T.B. that corroborate T.B.'s testimony that Marsh threatened her and their children.

- 4 -

had to either talk to him or spend time with him, not complain much . . . I just had to do what he said."

In November 2020, T.B. moved into a new apartment. Marsh had his own residence. T.B. testified that by this time she had ended her sexual relationship with Marsh and only continued a co-parenting relationship with him. T.B. stated that the last time she had consensual sex with Marsh was either in September or October of 2020. T.B. testified that when Marsh would pick up the children from her residence, he would often stay at her residence without permission. On cross-examination, Marsh admitted that T.B. told him, multiple times, that she no longer wanted to be in a romantic or sexual relationship with him.

The incident giving rise to Marsh's criminal convictions occurred on January 18, 2021, while Marsh was at T.B.'s residence. T.B. explained that Marsh forced his fingers into her vagina and then forcibly raped her.[4] T.B. reported Marsh's conduct later that day and submitted to a SANE examination.

The jury found Marsh guilty of the charged offenses. Marsh appeals.

ANALYSIS

I. *The trial court did not abuse its discretion by excluding evidence of a possible pregnancy.*

Marsh contends that the trial court erred by limiting his cross-examination of T.B. He argues that a "possible pregnancy provided T.B. with a motive to fabricate her allegations against" him.

"A circuit court's decisions regarding the admissibility of evidence are reviewed for abuse of discretion." *Howard v. Commonwealth*, 74 Va. App. 739, 753 (2022). "A reviewing court can conclude that an abuse of discretion occurred only when reasonable jurists could not differ about the correct result." *Id.*

---

[4] Marsh does not challenge the sufficiency of the evidence for any of his convictions.

"It is a fundamental principle of jurisprudence that evidence which is not relevant is not admissible." *Warren v. Commonwealth*, 76 Va. App. 788, 802 (2023) (quoting *Perry v. Commonwealth*, 61 Va. App. 502, 509 (2013)), *aff'd*, 303 Va. 60 (2024). "'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. "The proponent of the evidence bears the burden of establishing[,] by a preponderance of the evidence, the facts necessary to support its admissibility." *Perry*, 61 Va. App. at 509 (alteration in original) (quoting *Bell v. Commonwealth*, 49 Va. App. 570, 576 (2007)).

Here, any evidence of T.B.'s possible pregnancy from her last consensual sexual encounter with Marsh was irrelevant and immaterial to any issue before the jury on the charges Marsh faced. The trial court permitted testimony regarding the previous sexual encounter itself but found that any evidence about the possible pregnancy was unnecessary and did not impact whether T.B. consented to the sexual contact on the date of the offense. The suggestion that T.B. was motivated to lie about the encounter because she possibly had been pregnant was too attenuated to be relevant. "While a factfinder may 'draw reasonable inferences from basic facts to ultimate facts,' the inferences cannot become so attenuated that they 'push "into the realm of non sequitur."'" *Bowman v. Commonwealth*, 290 Va. 492, 500 (2015) (first quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); and then quoting *Thomas v. Commonwealth*, 48 Va. App. 605, 608 (2006)). Marsh failed to demonstrate that T.B.'s possible pregnancy created an incentive to fabricate her rape claim.

Even if the evidence had some relevance, the trial court correctly determined that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. "Relevant evidence may be excluded if: (a) the probative value of the evidence is substantially outweighed by (i) the danger of unfair prejudice." Va. R. Evid. 2:403(a)(i). "It is well-settled that '[t]he responsibility for balancing the competing considerations of probative value and prejudice

- 6 -

rests in the sound discretion of the trial court." *Commonwealth v. Proffitt*, 292 Va. 626, 635 (2016) (alteration in original) (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 715 (2008)). "'[U]nfair prejudice' refers to the tendency of some proof to inflame the passions of the trier of fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Id.* at 636 (alteration in original).

Here, the trial court did not abuse its discretion when it also found the evidence excludable under Virginia Rule of Evidence 2:403. The possible pregnancy occurred in the fall of 2020, prior to the incident, and thus it is not obvious how this evidence is particularly probative of whether the January 2021 incident was consensual. The trial court correctly noted that Marsh must rely on speculation, which diminishes the probative value of the evidence, to argue that T.B. was mad at Marsh for possibly getting her pregnant months earlier, and thus she lied about being sexually assaulted and raped to get back at Marsh for possibly getting her pregnant. The trial court also noted the possibility that the jury could hear that T.B. terminated the pregnancy. At most, this evidence has minimal probative value but significant prejudice, thus the trial court properly excluded it under Rule 2:403.

We find no abuse of discretion with the trial court's decision to limit the cross-examination of T.B. to exclude any questioning about a possible pregnancy.

II. *The trial court did not abuse its discretion by allowing the victim to remain in the courtroom during the trial.*

Marsh argues that the trial court abused its discretion by allowing T.B. to remain in the courtroom during the trial. He asserts that T.B.'s "presence in the courtroom denied [him] a fair trial, as it allowed [T.B.] the opportunity to shape her testimony to correspond with witnesses who came before her."

In the trial court, Marsh's counsel proffered that "[o]ur concern is that . . . [T.B.] will be the last person called in their presentation of the evidence, which means she would have an opportunity

to listen to everybody . . . which might influence her testimony and what she says." Defense counsel also proffered that T.B. "made a couple inconsistent statements" and that she "might be trying to manipulate evidence" because some text messages on her phone "didn't show up on the extraction."

The trial court disagreed, noting that T.B. could be cross-examined about inconsistent statements: "If there are issues of inconsistent statements, then I know both attorneys can deal with that issue on cross-examination in a . . . normal fashion." The trial court found that T.B. could remain in the courtroom under Code § 19.2-265.01 and that the presence of T.B. would not impair Marsh's right to a fair trial.

During trial, Marsh's counsel renewed the objection to T.B. remaining in the courtroom, specifically noting that "[T.B.]'s been crying" and "[e]very single juror just went by and made eye contact with her." The trial court disagreed and continued to allow T.B. to remain in the courtroom. In denying Marsh's request, the trial court noted that it was closely observing the entire courtroom, including T.B.'s behavior and demeanor. "[T]he Court feels . . . that pursuant to statute and the totality of the circumstances that it was the correct ruling" to permit T.B. to remain in the courtroom. The trial court stated that "I don't see any prejudice" by allowing her to remain in the courtroom. The trial court denied Marsh's counsel's request to order T.B. to sit elsewhere in the courtroom, noting that T.B. would not be able to see evidence presented on the T.V. and that the trial court would not be able to see T.B. and monitor her demeanor if she was moved elsewhere.

"An abuse of discretion occurs only when 'reasonable jurists' could not disagree as to the proper decision." *Warren*, 76 Va. App. at 799 (quoting *Thomas v. Commonwealth*, 62 Va. App. 104, 111 (2013)). "This principle necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable." *Id.* (quoting *Thomas*, 62 Va. App. at 111).

"During the trial of every criminal case . . . any victim as defined in § 19.2-11.01 may remain in the courtroom and shall not be excluded unless the court determines, *in its discretion*, the presence of the victim would impair the conduct of a fair trial." Code § 19.2-265.01 (emphasis added). "[T]he first premise of the trial court's analysis begins with the proposition that a victim witness has a statutory right to be exempted from the sequestration order." *Hernandez-Guerrero v. Commonwealth*, 46 Va. App. 366, 369 (2005). "That right can be overcome, but only if the trial court decides that allowing the victim witness to remain in the courtroom would impair the conduct of a fair trial." *Id.* "The statute likewise makes clear it is the trial court's exercise of discretion, not ours, that controls. It thus preserves the common law principle that an appellate court should not examine the sequestration decision *de novo*, but should review it under an abuse of discretion standard." *Id.*

> A victim witness allowed to remain in the courtroom pursuant to Code § 19.2-265.01 inevitably hears the testimony of the witnesses at trial either before he testifies on direct or before his opportunity to retake the stand in rebuttal. By itself, that observation cannot necessarily "impair the conduct of a fair trial" under Code § 19.2-265.01.

*Id.* at 370. "To support a claim of unfairness under Code § 19.2-265.01, a defendant must proffer to the trial court facts which, if true, would make the victim witness uniquely vulnerable to being manipulated, consciously or not, by the suggestive power of other witnesses' testimony." *Id.* at 371.

To start, the record does not support Marsh's suggestion that T.B. wept throughout the trial. Instead, the record reveals that T.B. cried occasionally—and particularly after she had testified for nearly four hours.[5] The trial court found that T.B.'s presence in the courtroom did not impinge on Marsh's right to a fair trial, and the trial judge had the opportunity to view the proceedings first hand. The record does not reveal a specific disturbance by T.B. that warranted her removal.

---

[5] Marsh did not move for a mistrial at any point.

Similarly, the trial court provided a remedy for Marsh with respect to T.B.'s prior statements: that is to impeach T.B. with her inconsistent statements on cross-examination to weaken her credibility in a case that largely hinged on witness credibility. In *Hernandez-Guerrero*, we found that the fairness of a trial was not impaired where the victim already sat through two codefendants' trials and heard all the witnesses' testimony. *Id.* at 371 n.2. Here, a reasonable jurist, under these facts, could find, pursuant to Code § 19.2-265.01, that T.B. should be permitted to remain in the courtroom, and thus, we conclude that the trial court did not abuse its discretion here.

III. *The trial court did not abuse its discretion by limiting Marsh's voir dire questions.*

Marsh asserts that the trial court erred "in limiting [his] *voir dire* questions." He contends that his "proposed questions were designed to disclose juror interest or prejudice, and should have been permitted."

On appeal, Marsh challenges four specific questions that the trial court refused at the voir dire stage. *Supra* at 3. The trial court denied the proposed questions, finding that they were "duplicative" and "get[] into too much of the juror's personal life and go[] beyond" what is permitted. The trial court allowed Marsh to ask whether anyone had difficult relationships around co-parenting and responsibility and whether anyone had custody fights with former partners. *Supra* at 4 n.2.

Code § 8.01-358[6] states in relevant part:

> The court and counsel for either party shall have the right to examine under oath any person who is called as a juror therein and shall have the right to ask such person or juror directly any relevant question to ascertain whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of

---

[6] While this statute is found in Title 8.01 on civil procedure, our Supreme Court has found this provision applicable in criminal trials as well: "The manner in which jury selection is conducted is within the discretion and control of the trial court, guided by statute and rule of court. *See* Code § 8.01-358." *Buchanan v. Commonwealth*, 238 Va. 389, 400 (1989); *see also LeVasseur v. Commonwealth*, 225 Va. 564, 580 (1983) (applying Code § 8.01-358 in the criminal context).

any bias or prejudice therein; and the party objecting to any juror may introduce any competent evidence in support of the objection; and if it shall appear to the court that the juror does not stand indifferent in the cause, another shall be drawn or called and placed in his stead for the trial of that case.

Trial courts must afford a party a "full and fair" opportunity to determine whether prospective jurors "stand indifferent in the cause." *LeVasseur v. Commonwealth*, 225 Va. 564, 581 (1983). But it is within the trial court's sound discretion to decide when a defendant has had such an opportunity. *Id.* "A party has no right, statutory or otherwise, to propound any question he wishes, or to extend *voir dire* questioning *ad infinitum*." *Huguely v. Commonwealth*, 63 Va. App. 92, 117 (2014) (quoting *LeVasseur*, 225 Va. at 581). Finally, "to be relevant, a question to a prospective juror must necessarily disclose or clearly lead to the disclosure of opinion or prejudice." *Buchanan v. Commonwealth*, 238 Va. 389, 402 (1989).

Here, three of the questions that were excluded, which Marsh argues constitute reversible error, were duplicative of questions the trial court permitted. The excluded questions asked about "difficulty co-parenting," "children from a prior relationship," and "struggle[s] with a long-term relationship ending." *Supra* at 3. As noted, the trial court allowed two questions about "custody fights with former partner[s]" and "difficult relationship[s] with . . . prior partner[s] specifically around the issue of parenting and responsibilities." The trial court properly concluded that the questions Marsh now challenges on appeal were "duplicative" of questions already given. Thus, the trial court did not abuse its discretion by denying these three questions.

The final question Marsh argues constitutes reversible error relates to low-income families. *Supra* at 4. We agree with the trial court that this question was inappropriate under the circumstances because it would not "necessarily disclose, or clearly lead to the disclosure of the statutory factors of relationship, interest, opinion, or prejudice" and thus, the trial court was "entirely within [its] discretion" to exclude it. *See LeVasseur*, 225 Va. at 581. This question also "gets into

too much of the juror's personal life," as found by the trial court, and would not "necessarily disclose" whether a given juror could hear the case impartially. *See LeVasseur*, 225 Va. at 582 (explaining that "[s]uch attitudes [toward the use of illegal drugs generally] might well be interesting to counsel, but they have no relationship to the juror's ability to abide by the court's instructions, to find the facts impartially, and to apply the law to the facts conscientiously"). Thus, the trial court was within its discretion to deny this question about specialized knowledge of low-income families. We find no abuse of discretion with the trial court's exclusion of the foregoing voir dire questions.

CONCLUSION

For these reasons, we affirm Marsh's convictions.

*Affirmed.*