COURT OF APPEALS OF VIRGINIA

Present:    Judges Malveaux, Fulton and White
Argued by videoconference


MARCUS CORDELL REID, SR.

                                                    MEMORANDUM OPINION[*] BY
v.         Record No. 0514-24-3                     JUDGE KIMBERLEY SLAYTON WHITE
                                                    APRIL 8, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Frederick Watson, Judge

Carlos A. Hutcherson for appellant.

Robert D. Bauer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, Marcus Cordell Reid, Sr. was convicted of distributing more than

one ounce, but not more than five pounds, of marijuana to a police informant.[1]  On appeal, Reid

contends that the trial court erred in overruling his hearsay objection to an investigator's testimony

that, during an attempted controlled buy, the informant asked Reid if he had what the informant had

asked for.  He also contends that the trial court erred in overruling his chain-of-custody objections to

admitting the audio-video recordings of his two drug-related interactions with the informant and the

certificate of analysis for the controlled buy of marijuana.  We find the trial court did not abuse its

discretion in ruling that the investigator's testimony was not hearsay and that the evidence was

sufficient to establish chain of custody for the recordings and the certificate of analysis.

Accordingly, we affirm Reid's conviction.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] At this trial, the trial court found Reid not guilty of possessing more than five pounds of
marijuana with the intent to distribute.

BACKGROUND[2]

On the evening of February 17, 2021, the Central Virginia Regional Drug and Gang Task Force used an informant to arrange a "controlled purchase" of marijuana from Reid for $7,000. The informant was equipped with an audio-video recording device that enabled investigators to conduct real-time audio monitoring of conversations between Reid and the informant. Using their cell phones, each investigator could listen to the live audio feed from the recording device.

Reid and the informant agreed to meet in the Lowe's parking lot on Timberlake Road in Lynchburg, Virginia. After meeting with investigators, who supplied him with $7,000 in cash and cleared him of possessing any drugs or other contraband on his person or in his vehicle, the informant drove alone to the Lowe's parking lot. Members of the Task Force followed the informant in separate vehicles and positioned themselves in nearby locations. Campbell County Sheriff's Office Investigator Karen Wilson and Appomattox County Sheriff's Office Investigator T.M. Woody rode together in one vehicle and parked in the Lowe's parking lot near a Waffle House. Amherst County Sheriff's Office Investigator Tosh and Investigator Rothgeb rode together and parked their vehicle in the parking lot of a gasoline station across the street. Investigator Crow came to the scene later.

A few minutes after the informant parked his vehicle in the Lowe's parking lot, Investigator Wilson saw a blue Mazda sport utility vehicle (SUV) pull up to the informant. From her location, Investigator Wilson could not see the license plates on the SUV, and she could not see inside the informant's vehicle, but she could hear the informant make contact with Reid and the conversation that followed. In particular, she heard the informant ask Reid, "[D]o you have the thing that I asked for?" She then heard Reid respond, "I do not have the weed." Following

---

[2] According to familiar principles of appellate review, we will state the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

- 2 -

this reply, Reid told the informant that he kept the marijuana at his girlfriend's place and that he had his wife and children in the car with him. After talking for about four minutes, the informant and Reid left the Lowe's parking lot in their respective vehicles. The informant drove back to the location where he was to meet again with investigators. Reid drove to a nearby service station, where he went inside the store with the two small children who were in the SUV. Investigator Wilson, who with Investigator Woody had followed Reid, went inside the store as well and saw Reid with the children. Investigators Rothgeb, Tosh, and Crow followed the informant as he drove back to where he was expected to meet again with investigators. Investigators Wilson and Woody also drove back to the meeting place.

Upon returning to the meeting location, the informant handed over the recording device and Investigator Wilson took custody of it. The informant did not have the ability to manipulate or change this recording. Afterwards, Investigator Wilson transported the recording device and logged it into evidence, where it stayed. Later, she viewed the recording and confirmed that its contents had not been altered and that it was consistent with what she had been able to hear in real time.

On February 18, 2021, Reid contacted the informant and said that he was ready to meet with him. The informant told Investigator Crow and met with investigators to prepare for another attempt at buying marijuana from Reid. Again, the investigator supplied the informant with an audio-video recording device. Again, a search of the informant and his vehicle cleared him of possessing any drugs or contraband. The informant then drove to the agreed location in Lynchburg.

Following the protocol of the previous day, Investigator Wilson and other members of the Task Force followed the informant and conducted surveillance. This time, however, Investigator Wilson conducted "roving" surveillance of the surrounding area. While looking

down an alley towards the back of the property, Wilson saw Reid as he came out of the residence onto the front porch and walked towards the informant. She also saw the same vehicle on the property that she had seen the previous evening in the Lowe's parking lot. The informant and Reid met for 20 minutes.

After the meeting, the informant met with the Task Force investigators. Investigator Wilson followed the informant for approximately two and one-half miles. Throughout the informant's return trip, Investigator Wilson followed alone in her vehicle and Investigators Tosh and Crow followed together in another vehicle. The informant made no stops. Although Investigator Wilson lost sight of the informant's vehicle for about ten minutes, the informant's audio-video recording device was still recording and provided the investigators with live audio.

Upon the informant's return, Investigator Crow debriefed the informant and Investigator Wilson took custody of the green plant material that the informant had purchased from Reid. She also took custody of the informant's audio-video recording and, without tampering with it, logged the recording into evidence. Investigator Wilson subsequently viewed the recording, observing that it did not appear to have been tampered with. She also listened to the recording and compared it to the live audio that she heard as the events occurred, finding that the recorded conversations matched her recollection of the live audio. The plastic bag containing the green plant material was delivered by hand to the Virginia Department of Forensic Science. Laboratory analysis confirmed that the informant had bought about one pound of marijuana from Reid.

At his bench trial, Reid objected to Investigator Wilson's testimony about any statements that the informant made to Reid when they met in the Lowe's parking lot on February 17, 2021, on hearsay grounds. Initially, defense counsel objected by saying, "I think she can say what my

client said but I don't think she can say anything else." Then, after the Commonwealth asserted that it was not seeking to prove the truth of the matter asserted in the informant's statements but was seeking to admit them "to show what the Defendant did in response to those statements," Reid argued that the statements were "statements against penal interest" and the informant was needed to testify as to those statements, but the informant was unavailable. Reid asserted that the "missing witness rule" applied to the informant's statements "where the witness could be procured." Lastly, Reid argued that the informant's statements to him were inadmissible because they did not clarify anything and that they "ha[d] nothing to do with what happened" later.

Based on the Commonwealth's "assertion that this [was] not being offered for the truth of the matter," the trial court overruled Reid's hearsay objection. It stated, however, that it would reconsider "any particular statement" that Reid believed to be "offered for the truth of the matter." Afterwards, Investigator Wilson testified as follows: "On the live feed, I heard a conversation[.] [T]he CI asked, do you have the thing that I asked for[?]" She then testified as to Reid's answer to that question: "Then it was referred back to him from Mr. Reid that he stated I do not have the weed. He keeps it at his girlfriend's place and he[] had his wife and children with him when he had arrived to meet the CI at Lowe's that night." In response, defense counsel again objected: "That's clearly offered for the truth asserted and it's gonna come in later on . . . ." When the trial court pressed counsel to clarify whether he was objecting to the informant's question or Reid's answer, defense counsel replied, "Do you have the weed with you."[3] Thereafter, again finding that this statement was "not an assertion offered for the truth of the matter," the trial court overruled this hearsay objection as well.

---

[3] Defense counsel incorrectly stated what the informant's question was. The informant's question was, "[D]o you have the thing that I asked for[?]"

During the Commonwealth's case in chief, Reid also objected to the admission of the informant's two audio-video recordings and the certificate of analysis dated March 15, 2021, on chain-of-custody grounds. Regarding the February 17, 2021 recording, Reid argued that the Commonwealth failed to prove chain of custody because the informant did not testify to rule out any mishandling of the recording. He also argued that Investigator Wilson's testimony as to her subsequent review of the recording did not resolve the chain-of-custody issue. The trial court disagreed and overruled the objection. Regarding the February 18, 2021 recording, Reid made no additional argument. Defense counsel simply said, "Judge, I have the same objection but no further objections." Without explicitly overruling the objection, the trial court admitted the recording. Regarding the certificate of analysis, Reid argued that the informant's testimony was necessary to avoid speculation as to the source of the marijuana that the Task Force submitted for laboratory analysis. The trial court found, however, that Investigator Wilson's testimony about her surveillance of the informant was sufficient to establish chain of custody. It thus overruled Reid's objection and admitted the certificate of analysis.

## ANALYSIS

Reid presents four assignments of error, but they concern only two areas of evidentiary law: (1) hearsay and (2) chain of custody. For this reason, we address the first assignment of error and then we collectively address the second, third, and fourth assignments of error.

### I. The Court Did Not Abuse its Discretion in Overruling Reid's Hearsay Objection to Investigator Wilson's Testimony

In addressing his first assignment of error, Reid argues that Investigator Wilson's testimony about the informant's *statements* to Reid was inadmissible hearsay and, therefore, the trial court erred in admitting them over his objection. In reviewing the trial transcript, however, we find that, when the trial court asked Reid to specify the statements or statement of the informant that he alleged to be inadmissible hearsay, Reid ultimately identified just one statement, "[D]o you have

- 6 -

the thing that I asked for," which he reworded as follows: "Do you have the weed with you." Immediately after this specific answer, the trial court overruled Reid's objection to Investigator Wilson's testimony about the informant's conversation with him on the evening of February 17, 2021. Thus, the narrow issue before us is whether, given our well-established jurisprudence on hearsay, the trial court erred in overruling Reid's hearsay objection to Investigator Wilson's testimony that the informant asked, "[D]o you have the thing that I asked for[?]" when he met with Reid. As we explain below, it did not.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Barnes v. Commonwealth*, 33 Va. App. 619, 626 (2000) (quoting *Crews v. Commonwealth*, 18 Va. App. 115, 118 (1994)). "A reviewing appellate court can conclude that 'an abuse of discretion has occurred' only in cases in which 'reasonable jurists could not differ' about the correct result." *Jones v. Commonwealth*, 71 Va. App. 597, 603 (2020) (quoting *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016)). "[B]y definition," however, a trial court "abuses its discretion when it makes an error of law." *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017) (quoting *Commonwealth v. Greer*, 63 Va. App. 561, 568 (2014)). Thus, "[t]he abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Helmick Fam. Farm, LLC v. Comm'r of Highways*, 297 Va. 777, 794 (2019) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Va. R. Evid. 2:801(c). "Hearsay is generally inadmissible unless it falls within an exception." *Chenevert v. Commonwealth*, 72 Va. App. 47, 54 (2020). But "if a statement is not offered for its truth, it is not excludable as testimonial hearsay because it is not hearsay at all." *Bennett v. Commonwealth*, 69

Va. App. 475, 489 (2018). For this reason, "words offered solely to give context to party admissions are not hearsay and are admissible." *Swain v. Commonwealth*, 28 Va. App. 555, 560 (1998)). Thus, "[d]etermining whether a statement is offered to prove the truth or falsity of the matter asserted requires an analysis of the purpose for which the statement is offered into evidence." *Id.* at 559; *see Manetta v. Commonwealth*, 231 Va. 123, 127 (1986) (noting that "[t]rial courts are often required to analyze the real purpose for which evidence is offered").

It is now well-established that "[t]he hearsay rule does not operate to exclude evidence of a statement offered for the mere purpose of explaining the conduct of the person to whom it was made." *Weeks v. Commonwealth*, 248 Va. 460, 477 (1994). Accordingly, we have consistently held that out-of-court statements are not hearsay when offered to provide context for the defendant's admissions or incriminating statements in response. *See Jones*, 71 Va. App. at 605, 608 (a child victim's recorded telephonic statements accusing the defendant of kissing her and "mess[ing] with [her] privates" were not hearsay because they were offered not for their truth but as statements offered to provide context for the defendant's admissions of sexual abuse (second alteration in original)); *see also Swain*, 28 Va. App. at 559-60 (a drug purchaser's statement, "a twenty," was not hearsay because the Commonwealth did not offer the statement for its truth, but to explain and give meaning to the defendant's statements, "what do you want," and "just a minute"); *Bennett*, 69 Va. App. at 490 (the audio recording of the defendant's telephone call with a confidential informant was not hearsay because it was admitted to show how the defendant reacted when the informant said he wanted to buy "funny sticks," and "a whole 3.5," or an "eight ball" of cocaine).

In this case, the trial court did not abuse its discretion in overruling Reid's objection to Investigator Wilson's testimony that the informant asked Reid, "[D]o you have the thing that I asked for[?]" As the Commonwealth explained in responding to Reid's previous general

objection to any statements made by the informant, it did not seek to elicit Wilson's testimony to prove the truth of what the particular question stated or implied. Rather, the Commonwealth sought to elicit Investigator Wilson's testimony establishing the factual context for understanding why Reid would contact the informant the next day and agree to another meeting where he would give marijuana to the informant. Thus, like the out-of-court statements in *Jones*, *Swain*, and *Bennett*, the informant's question to Reid was not hearsay and, therefore, was admissible.

In his brief, Reid argues that the trial court erred in allowing Investigator Wilson to testify as to any statements made by the informant because "there was no identified 'reaction' by [Reid]" and these statements "don't clarify what takes place in this case." This argument fails, as it ignores the fact that Reid replied to the question, first mentioning weed, and explained where he kept the drug and why he didn't have it with him—as his wife and children were in his vehicle. Evidence revealed that Reid called the informant the next day to arrange a meeting to sell marijuana to the informant. Reid's call and subsequent sale of marijuana to the informant was an identifiable reaction to what the men had discussed the previous day in the Lowe's parking lot.

In further support of his assignment of error, Reid makes two additional points. First, he asserts that "[a]t no point did Officer Wilson testify that she knew [him] or knew or was familiar with his voice." Second, he contends that Investigator Wilson's testimony as to out-of-court statements made by an absent witness "denied [his] ability to confront witnesses against him." We find, however, that Reid did not make these arguments in the trial court. Therefore, we cannot consider them. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Making one

specific argument on an issue does not preserve a separate legal point on the same issue for review." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc). The "same argument must have been raised, with specificity, at trial before it can be considered on appeal." *Smith v. Commonwealth*, 48 Va. App. 521, 530 n.1 (2006) (citation omitted). Reid does not ask this Court to invoke the good-cause or ends-of-justice exceptions to Rule 5A:18, and we will not apply the exceptions sua sponte. *Edwards*, 41 Va. App. at 761.

II. Reid's Chain-of-Custody Objections to the Audio-Video Recordings and the March 15, 2021 Certificate of Analysis

A. Chain of Custody of the February 17, 2021 Audio-Video Recording

In his second assignment of error, Reid alleges that the trial court erred in overruling his chain-of-custody objection to admitting the audio-video recording of the informant's meeting with Reid in the Lowe's parking lot on the evening of February 17, 2021. To support this allegation, he focuses on the absence of the informant as a witness and argues that the Commonwealth "did not offer any evidence as to why [the recording] could not have been altered" by the informant. He asserts that, "[w]hen the informant left the Lowe[']s he was alone with the recording, and there was no evidence that it was not substituted for something else, or any guarantee that it was made on a particular day or at a particular time, and no witness to authenticate it." He made the same argument below, and the trial court found it unpersuasive. We agree.

"The determination on a chain of custody challenge lies within the trial court's broad discretion and will not be overturned on appeal absent an abuse of that discretion." *Pope v. Commonwealth*, 60 Va. App. 486, 511 (2012) (citing *Crews*, 18 Va. App. at 118). Under this standard, "only in those cases where 'reasonable jurists could not differ' has an abuse of discretion occurred." *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)).

- 10 -

"The proponent of the evidence bears the burden of establishing by a preponderance of the evidence, the facts necessary to support its admissibility." *Bell v. Commonwealth*, 49 Va. App. 570, 576 (2007). The Commonwealth must present evidence proving each "'vital link in the chain of possession,'" but it "'is not required to exclude every conceivable possibility of substitution, alteration or tampering.'" *Alvarez v. Commonwealth*, 24 Va. App. 768, 776-77 (1997) (first quoting *Robinson v. Commonwealth*, 212 Va. 136, 138 (1971); and then quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 857 (1991)). "[W]here there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight of the evidence." *Jeter v. Commonwealth*, 44 Va. App. 733, 739 (2005) (quoting *Reedy v. Commonwealth*, 9 Va. App. 386, 391 (1990)).

Here, the record demonstrates that the Commonwealth proved "every 'vital link in the chain of possession'" of the February 17, 2021 audio-video recording. *Hargrove v. Commonwealth*, 53 Va. App. 545, 554 (2009) (quoting *Alvarez*, 24 Va. App. at 777). Through the testimony of Investigator Wilson, the Commonwealth established that the Task Force investigators equipped the informant with an audio-video recording device that did not allow the informant to manipulate or alter the recording. The Task Force investigators searched both the informant and his vehicle before the scheduled meet-up, clearing him of any drugs or contraband. Moreover, Investigator Wilson and the other investigators used live audio to monitor the informant's words and actions before, during, and after the meeting with Reid in the Lowe's parking lot. Although Investigator Wilson could not see into the vehicles during the transaction, she could hear their conversations. And when the informant returned to the rendezvous location, she logged the recording into evidence. Then, later on, she viewed and listened to the recording and confirmed that its contents had not been altered.

- 11 -

## B.  Chain of Custody of the February 18, 2021 Audio-Video Recording

In his third assignment of error, Reid alleges that the trial court erred in overruling his chain-of-custody objection to admitting the audio-video recording of the informant's purchase of marijuana from Reid on the evening of February 18, 2021.  At trial, Reid objected to the admission of the February 18, 2021 audio-video recording on the same grounds and with the same argument as his objection to the admission of the February 17, 2021 audio-video recording.  It is on the same grounds and with the same reasoning we set forth above that we affirm the trial court's decision.

## C.  Chain of Custody of the Marijuana Recovered on February 18, 2021

With respect to items of evidence suitable for forensic analysis, "[t]he purpose of the chain of custody rule is to establish that the evidence obtained by the police was the same evidence tested."  *Jeter*, 44 Va. App. at 737 (quoting *Robertson*, 12 Va. App. at 857).  "Accordingly, to satisfy the chain of custody requirement, the proponent of the evidence must show 'with reasonable certainty that the item [has] not been altered, substituted, or contaminated prior to analysis, in any way that would affect the results of the analysis.'"  *Id.* (alteration in original) (quoting *Crews*, 18 Va. App. at 119).  "Where a controlled purchase of drugs is concerned, 'without [the informant's] testimony, the evidence proving that the [drugs] came from the defendant' may be 'purely circumstantial.'"  *Bennett*, 69 Va. App. at 492 (alterations in original) (quoting *Jones v. Commonwealth*, 21 Va. App. 435, 441-42 (1995) (en banc)).

In support of his fourth assignment of error, Reid argues that the ten-minute period during which the informant was out of Investigator Wilson's sight while driving from the Hood Street residence to the Florida Avenue meeting location was the "missing vital link" in the chain of custody at the trial.  We disagree.  As the Commonwealth correctly points out in its brief, "the testimony of the Task Force officers and the contents of the February 18 recording accounted for

- 12 -

the informant's actions from the time he received the marijuana from Reid until he delivered it to the officers." Furthermore, the Task Force officers searched both the informant and his vehicle before meeting with Reid, finding that he was not in possession of any drugs or contraband. But even if the ten-minute "gap" could be seen as raising a question about the informant's handling of the contraband, it only went to the weight of the marijuana evidence, not its admissibility. "[G]aps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility." *Pope*, 60 Va. App. at 511 (second alteration in original) (quoting *Aguilar v. Commonwealth*, 280 Va. 322, 332-33 (2010)). "[A] chain of custody is properly established when the Commonwealth's evidence affords reasonable assurance that the exhibits at trial are the same and in the same condition as they were when first obtained." *Vinson v. Commonwealth*, 258 Va. 459, 469 (1999). Thus, the trial court did not abuse its discretion in overruling Reid's objection to admitting the March 15, 2021 certificate of analysis.

CONCLUSION

For the foregoing reasons, we affirm Reid's conviction.[4]

*Affirmed.*

---

[4] For good cause shown, appellant's request for an extension of time to file a notice of the filing of transcripts is granted.